

# WITTELS LAW
New York & New Jersey

**Steven L. Wittels**  
**Partner**  
slw@wittelslaw.com

18 Half Mile Road  
Armonk, New York 10504  
T: (914) 319-9945   F: (914) 273-2563

June 17, 2015

**Via ECF**
Honorable Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   No. 13 Civ. 04427-NGG-RML: *Delgado et al v. Ocwen Loan Servicing, LLC et al.*

Dear Judge Levy:

On behalf of Plaintiffs and the proposed Class, we write in advance of tomorrow's 12:00 p.m. status conference to outline a number of outstanding discovery issues the parties have yet to resolve.

Brief Overview of Plaintiffs' Claims and Procedural Posture

As Your Honor will recall, this RICO class action challenges Defendants' practice of sending small sum checks to Defendant Ocwen's mortgage customers that are disguised as refunds from the mortgage company. After consumers unwittingly deposit the checks – called "solicitation checks" – Defendants enroll them in expensive home warranty and service plans offered by Defendant Cross Country. Defendants then bill consumers using inconspicuous line items on Ocwen's monthly mortgage statements that disguise the nature of the charges and the fact that they come from an unrelated third party.

Defendants initially moved to dismiss Plaintiffs' claims, arguing that no reasonable customer could be misled by the solicitation checks. Judge Garaufis denied the motion in substantial part, sustaining the RICO counts and certain claims under New York and California's consumer fraud laws. (ECF No. 42). Thereafter, with Defendants' agreement Plaintiffs filed a Third Amended Complaint ("TAC") adding additional named plaintiffs from a total of 18 states. Defendants have since moved to dismiss certain counts in the TAC, which is currently in the briefing stage.

Regarding discovery, the parties have had conferences with Your Honor to work out a discovery schedule, including an ESI protocol entered on March 16, 2015. (ECF No. 65). Although Defendants have made initial document productions, ESI production has not yet commenced and the parties are working to resolve the remaining issues regarding custodians and appropriate keyword search terms. Cross Country recently propounded interrogatories to all 30 named Plaintiffs and over the past few days has been serving piecemeal requests for admissions

**Honorable Robert M. Levy** <span style="float:right">Page **2** of **3**</span>
June 17, 2015

on some of the named Plaintiffs. No depositions of any party have yet occurred, although Defendants just this week requested that all 30 named Plaintiffs be deposed.

<u>Outstanding Discovery Issues</u>

The following are the current issues in dispute.

1. *Cross Country's Non-Check Solicitations for Ocwen.*

In addition to solicitation checks, Cross Country markets its home warranty and service plans to Ocwen's mortgage customers via a number other of methods, including direct mail that does not use a check and telemarketing. From the document productions made to date, Plaintiffs have learned that Cross Country maintains detailed data on both its solicitation check marketing as well as the non-check marketing. This data includes the ratio of customers solicited versus those who sign up, the rates at which the enrolled consumers use the services, the length of time the customers stay enrolled, their cancelation rates, the reasons consumers cancel, and the relative profitability of each marketing method. Plaintiffs have served discovery demands for Cross Country's data/analysis of its non-check marketing, but the company has argued that such information is not relevant to our case because it does not concern solicitation checks. To the contrary, such information is highly pertinent to Plaintiffs' claims, and for the reasons briefly discussed below (which we can elaborate on tomorrow) we ask that the Court order the production of this information.

First, Plaintiffs' analysis of the documents produced thus far reveals that Cross Country's solicitation checks are vastly more effective in enrolling Ocwen's customers when compared to Cross Country's other non-check marketing methods. The solicitation checks also result in lower customer usage of Cross Country services, thus generating greater profits than Cross Country's non-check marketing. Further, Ocwen customers enrolled in plans via solicitation checks cancel at a very high rate, strongly suggesting that consumers are not aware of the effect of cashing a solicitation check.

Defendants' document production also indicates that thousands of Ocwen customers have complained to both Ocwen and its partner Cross Country about how they found themselves signed up for one Cross Country's plans. Thus, Plaintiffs' discovery demands for Cross Country's data and analysis of its non-check campaigns bear directly on numerous elements of Plaintiffs' case, including whether Defendants' knew their solicitation checks were misleading consumers, and whether the design and layout of the solicitation checks were material to consumers' decisions to endorse Defendants' checks. Further, in order to prove their RICO and consumer fraud claims, Plaintiffs must show that Defendants engaged in fraudulent and deceptive business practices. Because the data on the relative effectiveness (or lack thereof) of Cross Country's other marketing methods bears directly on these key questions, we request that Your Honor direct Cross Country to promptly produce this important data.

**Honorable Robert M. Levy**                                                                                                                        Page **3** of **3**
June 17, 2015

*2. Depositions of the Named Plaintiffs*

      Plaintiffs have agreed to produce the four named Plaintiffs whose claims have been ruled upon and sustained by Judge Garaufis. However, we believe it is not an efficient use of the parties' or the Court's resources to conduct depositions of the other 26 named plaintiffs – as Defendants want – prior to the Court resolving the newly filed motions to dismiss and/or compel arbitration.

*3. Plaintiffs Proposed Extension of the Civil Case Management Plan*

      Despite the parties' attempts to work cooperatively to meet the deadlines in the Case Management Plan ("CMP") (ECF No. 51), the original deadlines for motion practice on the amended complaint slipped by nearly four months (CMP, no. 3), and Defendants' didn't serve their motion to dismiss the new plaintiffs' claims and a separate motion to compel arbitration until May 21, 2015. Plaintiffs' opposition is due at the beginning of July, and we have asked Defendants for an extra 28 days until July 31 to file our opposition. Defendants have stated they need to confer with their clients and discuss the requested extension after tomorrow's conference.

      Plaintiffs have also asked Defendants to join in an application to Your Honor extending the fact discovery cutoff from the fast-approaching August 30 date (CMP, no.13). Defendants have responded that the parties should address this scheduling issue after they determine when Defendants will first produce ESI, or after the parties first see how much discovery can be completed before the end of August. Given that this is a substantial RICO class action with tens of millions of dollars at stake, we ask that the Court consider a reasonable extension of the fact discovery cutoff at this time, which takes into account the necessity of extensive further discovery contemplated by all parties.

      Thank you for your consideration of these matters in advance of the conference.

                                              Respectfully submitted,

                                                /s/ Steve L. Wittels
                                                  Steven L. Wittels

cc:      All counsel of record (via ECF)