

March 29, 2016

<u>**Via ECF**</u>

The Honorable Robert M. Levy
Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:  <u>***Delgado, et al. v. Ocwen Loan Servicing, LLC, et al.***</u><u>**, No. 13-cv-04427-NGG-RML**</u>

Dear Judge Levy:

　　We represent Defendants Cross Country Home Services, Inc., and Sandra Finn ("Cross Country") and submit this letter pursuant to Your Honor's March 21, 2016 order.  As also set forth in Cross Country's February 29, 2016 letter to Your Honor, Cross Country strongly opposes Plaintiffs' recent proposal for additional ESI discovery.  The anticipated burden and expense of the proposed discovery is disproportionate to the value of information sought by Plaintiffs, which is duplicative of materials already produced and bears only marginal relevance to this case.  Plaintiffs' objections to Cross Country's privilege log are squarely at odds with applicable Local Rules and other controlling authority, and are otherwise without merit.

**I.**　　**Plaintiffs' Request for Additional ESI Discovery Should Be Denied**

　　Plaintiffs ostensibly seek ESI regarding (i) individual consumer complaints and (ii) the initial development and "earliest use" of check-based marketing.  Plaintiffs represent that the discovery proposal would require only a "limited supplemental ESI production" from six or seven email custodians.[1]  But Plaintiffs' ESI proposal asks Cross Country to apply more than 30,000 independent search terms to as many as fourteen custodians over a fourteen year time frame.  The proposal clearly exceeds the "targeted" scope of information Plaintiffs professedly seek, and belies any claims of their "hard efforts" to limit discovery.  At bottom, Cross Country has already produced (or has offered to produce) ESI containing the information that Plaintiffs seek, much of which is available through alternative sources.  Plaintiffs' ESI proposal, if granted, would place an enormous financial burden on Cross Country, with little corresponding benefit to Plaintiffs.[2]

---

[1] Pls.' Mar. 25, 2016 Ltr. to J. Levy at 1-2.

[2] Plaintiffs have generally mischaracterized the parties' negotiations over the ESI proposal subject to this dispute.  The parties did not previously reach agreement regarding custodians; negotiations were stalled due to Plaintiffs' refusal to propose a reasonable set of search terms and date restrictions.

Hon. Robert M. Levy                    2                    March 29, 2016

**A. The customer complaint information sought from customer service supervisors has either been produced or can be produced from alternative sources.**

Plaintiffs' proposal for the collection of ESI from several low-level customer service supervisors would result in the production of highly duplicative information, much of which is beyond the narrow scope of information sought by Plaintiffs. According to Plaintiffs, the request for ESI from customer service supervisors seeks the following types of information:

> [T]he substance of customer complaints, . . . how customer service management dealt with [] complaints, [and] how these customer service managers interacted with their front line subordinates on how to deal with [] complaints[.]

Pls.' Mar. 25, 2016 Ltr. at 2. But Cross Country has produced at least five categories of documents that describe or record consumer complaints on an aggregate or individual basis:

- **Cancellation disposition data:** Aggregate information regarding Ocwen customers' stated reasons for cancellation of their Cross Country membership;

- **Proof of Enrollment ("POE") Requests:** Records of requests by Ocwen customers for physical proof of their enrollment, *e.g.*, signed enrollment checks;

- **Individual Transactional Histories:** Records of each transaction between Cross Country and every named plaintiff, including notes maintained by customer service representatives regarding each plaintiff's complaints and phone calls, as well as instructions to supervisors for actions to be taken on individual accounts;

- **Escalated Check Solicitation Complaints:** A list of all check solicitation complaints elevated to Cross Country's compliance department since mid-2013;

- **ESI from Cross Country Management regarding customer service issues:** ESI produced from Harold Dukenik and Steve Cabassa, both customer service managers, would reflect any internal reporting to, guidance from, or responses of, Cross Country senior executives regarding customer service issues.[3]

In addition to the above documents, Cross Country has conditionally agreed to produce two additional categories of documents to avoid the economic burden of an additional ESI review:

- **Individual transactional histories reflecting "follow-up" requests:** ESI reflecting thousands of customer "follow-up" requests submitted by front-line customer service representatives to supervisors, requesting action on items such as proof of enrollment requests, membership cancellations, refund requests, etc.

- **Monthly Customer Service Reports:** customer service department reports to management regarding internal operations of the customer response department.[4]

---

[3] Cross Country notes that the custodians proposed by Plaintiffs are "supervisors," not "managers." Any formal or informal policies or guidance from Cross Country to the customer service department necessarily would have arisen from senior management, many of whom already are ESI custodians.

[4] Cross Country is prepared to discuss samples of the forgoing materials at the April 1, 2016 conference.

Hon. Robert M. Levy                                3                                March 29, 2016

Accordingly, Plaintiffs are in possession of (or Cross Country has offered to produce) the information they seek – aggregate and individualized customer complaint data, records of responses to consumer complaints, records of escalated complaints, and reporting to management regarding customer service activities, including complaints and cancellation rates.[5]

Plaintiffs' ESI proposal would not materially improve the customer service data already available to them, nor is it tailored to do so. Tellingly, Plaintiffs seek to apply the same set of search terms to identify two wholly distinct sets of information – consumer complaints, on the one hand, and the design of check-based marketing, on the other. Notably, the so-called "narrower" set of search terms are essentially indistinguishable from the universal set of terms utilized by Plaintiffs during general ESI discovery, and surely are not tailored to retrieve the information purportedly sought. Cross Country questions what new information such a search would produce, apart from anecdotal accounts of customer grievances or internal discussions among low-level employees. Even so, the production of consumer-by-consumer information on a class-wide basis would be at odds with the intended efficiency of the class action vehicle.

### B.   Information sought regarding Cross Country's "earliest use" of check-based marketing is duplicative, overly broad, and of marginal relevance.

As the second prong of their ESI proposal, Plaintiffs seek information regarding the "earliest use" and design of check-based marketing by Cross Country. As a compromise position, Cross Country agreed to review ESI for two employees involved in the design and implementation of check-based marketing when the business practice first arose in 2002 and 2003. ESI from these two custodians was produced months ago. Now, aiming to increase their request ten-fold, Plaintiffs seek ESI from as many as seven custodians from 2002 to 2008.[6] Again, Plaintiffs propose using the same one-size-fits-all set of search terms, which have returned more than 59,000 documents for review from this grouping of documents alone. Conservative estimates price such a review at between $177,000 and $300,000. Plaintiffs cite no legal authority to support their claim that the information sought bears any relevance to the check solicitations at issue, or that it would justify such a significant expense.[7]

Plaintiffs' now-familiar blunderbuss approach to discovery cannot be squared with the proportionality standard of Rule 26. The ESI proposal seeks marginally relevant information from fourteen years ago, regarding the development of a marketing program not at issue in this dispute, during a time in which Cross Country maintained no relationship with Ocwen, its alleged co-conspirator. Moreover, as with their proposed search for customer complaints, the

---

[5] Rather than addressing how Cross Country's compromise offer was deficient, Plaintiffs simply state that the documents offered should have already been produced.

[6] Cross Country notes that the proposed time period would encompass documents originating as many as five years before Cross Country ever formed a relationship with Ocwen.

[7] Pls.' Mar. 25, 2016 Ltr. at 3. Instead, Plaintiffs state that discussions about the "design, legality, and consumer response" to check solicitations were "ongoing," relying on two documents from the 2002-2003 production. These documents, however, are of marginal relevance.

Hon. Robert M. Levy 4 March 29, 2016

proposed search terms are not tailored to collect the information Plaintiffs seek – the early implementation or design of check solicitations.

Plaintiffs do not explain how the value of the proposed discovery would outweigh its burden. Instead, Plaintiffs rely exclusively on the alleged large sums in controversy as evidence of proportionality. The proposed ESI search is a far cry from the "limited supplemental ESI production" peddled by Plaintiffs. The discovery would heavily burden defendants, but yield no clear material benefits for Plaintiffs. Accordingly, Defendants respectfully request that Plaintiffs' request for additional ESI discovery be denied.

## II.    Plaintiffs' Objections to Cross Country's Privilege Log Are Without Merit

Plaintiffs' objections to Cross Country's privilege log are meritless. Plaintiffs rely on non-controlling law and, inexplicably, fail to address (or even acknowledge) Local Rule 26.2(C). Yet further, Plaintiffs are guilty of the very "infractions" they bring before the Court. Mainly, Plaintiffs themselves have produced a categorical privilege log, and have also withheld large groups of documents without redactions. Cross Country has spent over 1,300 attorney hours on its privilege review and has produced a categorical privilege log that conforms to Local Rule 26.2 and the Model Categorical Log set forth by the New York City Bar Association.[8]

### A.    Plaintiffs Misstate the Law Governing Privilege Logs

Plaintiffs' demand for a "line-by-line" privilege log is squarely at odds with Local Rule 26.2. Inexplicably, Plaintiffs also produced a categorical log, but now seek to hold Cross Country to a higher standard. Yet further, Plaintiffs represent that Cross Country was required to seek leave to produce a categorical log (which Plaintiffs failed to do). Whereas, Local Rule 26.2 (C) creates a presumption *in favor* of such a log:

> [W]hen asserting privilege on the same basis with respect to multiple documents, *it is presumptively proper* to provide the information required by this rule by group or category. A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing *may not object solely on that basis*.

Local Civil Rule 26.2 (emphasis added). Further, Cross Country's log contains those elements required under Rule 26.2, including: date sent; author(s); recipient(s); document type; attorney name; a general description of the subject matter; and the type of privilege claim. *Id*. Plaintiffs' demand that Cross Country reconstruct its log into a line-by-line log is without legal support.[9]

### B.    Plaintiffs Overlook Many Substantive Concessions by Cross Country

Local Rule 26.2 encourages "[e]fficient means of providing information regarding claims

---

[8] www2.nycbar.org/pdf/report/uploads/20072891GuidanceandaModelforCategoricalPrivilegeLogs.pdf

[9] Plaintiffs suggest that Cross Country should simply adopt Ocwen's concessions, including to provide a line-by-line privilege log. This ignores the reality that Cross Country's log is as much as ten times larger.

Hon. Robert M. Levy                              5                              March 29, 2016

of privilege."[10]  Indeed, Committee Notes to Local Rule 26.2 provide further explain why cooperation is needed when dealing with privilege logs in the face of modern discovery:

> With the advent of electronic discovery and the proliferation of e-mails and e-mail chains, traditional document-by-document privilege logs may be extremely expensive to prepare, and not really informative to opposing counsel and the Court. There is a growing literature [] about the need to handle privilege claims in new and more efficient ways.  The Committee wishes to encourage parties to cooperate with each other in developing efficient ways to communicate the information required by Local Civil Rule 26.2 *without the need for a traditional privilege log*.[11]

In an attempt to resolve this dispute, Cross Country has, to no avail, offered to produce by April 15, 2016, numerous categories of additional information to aid in Plaintiffs' review of the log. Contrary to Plaintiffs' claim, Cross Country has offered the following material concessions:

- To, on Plaintiffs' request, re-review *any* categorical groupings of documents withheld and produce any documents determined not to be privileged;
- To negotiate the exchange of information for certain groups of emails withheld;
- To provide titles for all individuals on the log;
- To discuss specific individuals on the log at Plaintiffs' request;
- To review and correct any typographical or conversion errors;
- To provide a set of definitions concerning certain email domain inboxes;
- To provide additional information concerning assertions of privilege based on communications from in-house attorneys at Ocwen and Cross Country;
- To reconsider categorical objections raised by Plaintiffs on March 9;
- To identify the number of documents withheld in each categorical grouping; and
- To review entire categorical groupings of documents withheld for redaction.

The foregoing concessions appear not to have been satisfactory.  Nonetheless, Cross Country stands by and remains ready to honor its offers.

Respectfully submitted,

*/s/ Jason W. McElroy*
Jason W. McElroy

cc:  All Counsel of Record (via ECF)

---

[10] *Koumoulis v. Indep. Fin. Mktg. Grp.*, 295 F.R.D. 28, 49 (E.D.N.Y. 2013) (quoting E.D.N.Y Local Rule 26.2) (discussing categorical privilege logs).

[11] Line-by-line privilege logs have not been required under the Federal Rules for over 20 years.  *See* Fed. R. Civ. P. 26, 1993 Advisory Committee Notes ("Details concerning time, persons, general subject matter . . . may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by category."); *see also SEC v. Thrasher*, 1996 U.S. Dist. LEXIS 3327, at *2-3 (S.D.N.Y. March 20, 1996) (categorical log proper where "document-by-document listing would be unduly burdensome.").