

# WITTELS LAW
New York & New Jersey

**Steven L. Wittels**  
**Partner**  
slw@wittelslaw.com

18 Half Mile Road  
Armonk, New York 10504  
T: (914) 319-9945   F: (914) 273-2563

July 21, 2016

**Via ECF**
Honorable Steven L. Tiscione
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 1120

Re:   **No. 13 Civ. 04427-NGG-ST:** *Delgado et al v. Ocwen Loan Servicing, LLC et al.*

Dear Judge Tiscione:

As Interim Class Counsel, we write on behalf of Plaintiffs and the Class to outline the current discovery disputes which require the Court's assistance at tomorrow's status conference.

**1.   Cross Country's Failure to Timely Supply Promised Discovery**

Despite agreeing to produce certain documents and data in response to outstanding demands, Cross Country (or "CCHS") will not commit to a deadline for production—which is prejudicing Plaintiffs and the Class. The outstanding items are as follows:

a. *Sampling of Call Recordings of Class Members Who Used Plans.* More than two months ago (5-16-16) the parties finalized a sampling plan, yet CCHS has failed to produce the calls, and refuses to meet and confer regarding a timetable for production. The sampling is necessary for Plaintiffs' pending Motion for Class Certification (served 5-6-16).

b. *Subpoenas to CCHS' Parent: Cross Country Group (or "Group").* Discovery has shown that Group (which owns and controls CCHS) and its Board of Advisors were involved in Defendants check solicitation scheme. CCHS' defense counsel Weiner Brodsky accepted service of Plaintiffs' subpoenas for Group and several of its Advisors (issued 6-7-16) but refuses to schedule a meet and confer on ESI or agree to a production date. ESI is essential before Plaintiffs can take Group's depositions in late September-October.

c. *Defendants' Failure to Supplement Outdated Damages Interrogatories Under Rule 26(e).* Defendants led Plaintiffs to believe that the Enterprise only collected approximately $23 million in premiums from the proposed Class of 55,000+ Ocwen customers who signed solicitation checks but never used the plans. *See* CCHS' 2-5-15 Interrogatory Response No. 1(vi), attached as Ex. A. But these numbers are vastly underreported, as we learned informally from defense counsel in May. Instead, since February 2015 Defendants continued to collect another $10 million+ in premiums from approximately 11,500 Class Members. Because this number and related damages data in the Interrogatory responses are germane to

**Honorable Steven L. Tiscione**                                                                                                           Page **2** of **4**
July 21, 2016

    the briefing of the pending class motion, we've repeatedly asked Defendants to update their prior Interrogatory responses, but they refuse to commit to a date to serve their supplemental responses.

d. *Deleted Inbox of CCHS Custodian Steve Wilkins*. To avoid possible penalties under R. 37(e) and demonstrate inadvertence in the deletion of this custodian's inbox, CCHS agreed to provide Mr. Wilkins' last known contact information, but to date has not complied.

### 2. Redactions in Exhibits to Plaintiffs' First Notice of Supplemental Authority

CCHS objects to the unsealing of certain documents Plaintiffs submitted with their First Notice of Supplemental Authority in opposition to CCHS' motion to compel arbitration (ECF No. 115). After negotiations, the parties reached a compromise whereby CCHS would promptly provide Plaintiffs proposed redactions of the documents it contends contain sensitive information. The compromise's purpose is to further the dialogue concerning which documents attached to the Notice should be unsealed. CCHS has now reneged on the agreement and refuses to provide its proposed redactions until Judge Garaufis rules on its motion to strike the Notice. This Circuit has a strong presumption in favor of open access to all judicial documents,[1] and there is no legitimate reason why Defendants should be allowed to continue to shield documents from the public domain. CCHS should promptly provide its proposed redactions.

### 3. Ongoing Deficiencies in CCHS April 4, 2016 Interrogatory Responses

Plaintiffs have unsuccessfully attempted to persuade CCHS to make proper responses to Plaintiffs' Second Set of Combined Interrogatories (CCHS' Responses are attached as Ex. B). The disputed responses are as follows:

a. No. 1: This interrogatory asks CCHS to clarify a central data point regarding the 16,875 Ocwen class members whom CCHS coded as "Disputes Enrollment" after cashing a solicitation check. Prior to 2012, CCHS used a different code called "never authorized" to describe Ocwen customers who called to dispute enrollment. Plaintiffs simply want to know if the 16,875 customers coded as disputing enrollment includes all Ocwen customers coded as "never authorized."

b. Nos. 5(c) and 12: CCHS has refused to provide Plaintiffs with updated clarification on the deficiencies in these responses including CCHS' failure to answer a question posed by Interrogatory No. 5(c) and refusal to answer an inquiry directly related to the consumers potentially included in the proposed class in Interrogatory No. 12.

c. Nos. 6-7 & 9-10: In lieu of responding to these interrogatories relating to consumers' usage of CCHS' Referral Assistant plan, Defendants produced documents which are indecipherable

---

[1] *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) (judicial documents enjoy a "presumption of openness," rebuttable only "upon demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest") (internal quotations omitted).

**Honorable Steven L. Tiscione** Page **3** of **4**
July 21, 2016

   without further explanation and additional data.  CCHS now refuses to clarify the meaning of the documents as discussed during the July 1 meet and confer.

d. No. 8:  This interrogatory requests the number of class members enrolled in a Referral Assistant plan who used CCHS' "Appliance Buyline Discount Buying Service."  Defendants separately produced usage data for other aspects of this plan, but inexplicably won't produce the data for this discrete item.

e. No. 15:   This interrogatory asks that CCHS supply the cancellation reason code applied to Ocwen consumers enrolled via a check solicitation who placed a claim on a plan.  One of the key unresolved issues on Plaintiffs' class certification motion is whether the small percentage of consumers who placed a claim ($< 8\%$ of those who cashed the checks) should be included in the Class.  This data point is essential to helping Plaintiffs solidify the class definition.

f. No. 18:  This interrogatory asks that CCHS provide enrollment, premium, and claims data for each of its check solicitation campaigns.  CCHS simply refuses to answer.

g. No. 19:  This request asks CCHS to add three data points to Table 3 in its Supplemental Response to the Second Set of Interrogatories: the number of customers (i) enrolled in the respective plan, (ii) who paid a premium, and (iii) who made a claim.  CCHS supplies only boilerplate objections in the face of a narrowly tailored request.

h. No. 20:  This interrogatory requests data concerning membership revenue shared by the Cross Country-Ocwen Enterprise from non-check solicitations as a point of comparison to the data produced for check solicitations.  CCHS documents show this data is easily compiled (CCHS_2044).

   **4. Expert Depositions**

The Case Management Plan (the "CMP") entered by Judge Levy on November 17, 2014 (ECF No. 51) provides that expert depositions will occur after the close of fact discovery.  *See* CMP ¶¶ 13-18, attached as Ex. C.  That experts are deposed once a full factual record is developed is a well settled practice in this Circuit.[2]  CCHS insists, however, on enforcing its subpoena to depose Plaintiffs' marketing expert in September in the midst of fact discovery.  The Court should grant Plaintiffs' application to quash the subpoena until fact discovery is over.

   **5. Class Member Contact Information**

Defendants contest that the proposed Class Members unknowingly enrolled in their check solicitations.  Plaintiffs have served a discovery request for the contact information of Ocwen

---

[2] *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (noting in the class action context that "[a]fter the completion of fact discovery, the parties would undoubtedly pursue expert discovery. . . ."); *see also Graf v. Long Island R. Co.*, No. 04 Civ. 49459 (NG) (RER), 2006 WL 2620525, at *1 (E.D.N.Y. Sept. 13, 2006) ("Magistrate Judge Pohorelsky ordered that fact discovery be completed by December 9, 2005, and that expert discovery be completed no later than 30 days before trial.").

WITTELS LAW, P.C.

**Honorable Steven L. Tiscione** Page **4** of **4**
July 21, 2016

customers still being billed for CCHS' plans.  To avoid coming back to Your Honor with another dispute that can be addressed at tomorrow's conference, we have asked Defendants to tell us whether they will be objecting to this request.  They have refused to discuss the matter, and we ask that the Court intervene on this central issue.

       Thank you for the Court's consideration.

                                                     Respectfully submitted,

                                                /s/ Steven L. Wittels_____
                                                  Steven L. Wittels

cc:     All counsel of record (via ECF)