UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARGARITA DELGADO, et al., Individually
and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC, CROSS
COUNTRY HOME SERVICES, INC., SANDRA
FINN, and "JOHN DOES 1-10,"

Defendants.

No: 13 Civ. 04427 (NGG) (RML)


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT**


**WITTELS LAW, P.C.**
Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Interim Lead Class Counsel*

Dated: June 15, 2017

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

PROCEDURAL HISTORY ................................................................................. 1

PRELIMINARY STATEMENT ........................................................................... 2

BACKGROUND...................................................................................................4

ARGUMENT ........................................................................................................ 7

I.  THE COMPLAINT ADEQUATELY ALLEGES CONSUMER PROTECTION
    CLAIMS UNDER THE LAWS OF ALABAMA, ARIZONA, GEORGIA,
    INDIANA, PENNSYLVANIA AND TENNESSEE ........................................ 7

    A.  Plaintiffs' Alabama, Georgia, and Tennessee Claims May Be Pursued as a
        Class Because FED. R. CIV. P. 23 Controls ............................................ 7

    B.  Plaintiffs Have Alleged Justifiable Reliance Under the Consumer Protection
        Statutes of Georgia and Pennsylvania…………………………..…………………11

    C.  Defendants' Statute of Limitations Arguments Asserted Against the
        Alabama, Arizona, Indiana, and Tennessee Consumer Protection Claims are
        Premature On a Motion to Dismiss .................................................... 13

        i.   Plaintiffs' Alabama, Arizona, and Tennessee Consumer Protection
             Claims Are Subject to a Discovery Rule Requiring Fact-Specific
             Inquiries ............................................................................... 14

        ii.  Plaintiff Wisnewski's Indiana Consumer Protection Claims Were
             Tolled When the Prior Indiana Plaintiffs Joined this Lawsuit on
             November 20, 2014…………………………………………….........16

II. PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT AND BREACH OF
    FIDUCIARY DUTY ARE VIABLE ...................................................... 17

    A.  Plaintiffs' Claims For Unjust Enrichment Are Viable ......................... 17

        i.   Plaintiffs' Complaint Disputes the Existence of Any Enforceable
             Contracts ............................................................................... 17

        ii.  Defendants May Not Invoke the "Benefit of the Bargain" Where
             They Have Unjustly Retained Payments Procured Through Fraud.......... 19

        iii. FED. R. CIV. P. 8 Permits Plaintiffs to Pursue Unjust Enrichment as
             an Alternative Theory of Recovery..................................... 21

i

iv.     Texas and Virginia Recognize Unjust Enrichment As a Cause of Action ............................................................................................... 22

B.      Plaintiffs' Claims for Breach of Fiduciary Duty Are Viable ............................... 24

i.      Ocwen is a Fiduciary Because it Acted as Plaintiffs' Escrow Agent ....... 24

ii.     Several of the Newly Added Jurisdictions' Laws Are Akin to California ................................................................................................... 28

CONCLUSION ...................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. JP Morgan Chase Bank, N.A.*,
   2016 WL 3087701 (E.D. Mich. June 2, 2016) ........................................................ 26

*Alliance Labs, LLC v. Stratus Pharm., Inc.*,
   2013 WL 273309 (D. Ariz. Jan. 24, 2013) ............................................................. 22

*Ambrose v. Dalton Const., Inc.*,
   51 N.E.3d 320, 322 (Ind. App. 2016) ..................................................................... 19

*American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*,
   757 F.3d 540 (6th Cir. 2014) ..................................................................................... 9

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................................................. 16

*AOR Direct L.L.C. v. Buteo, LLC*,
   2017 WL 1150671 (Ariz. App. Div. March 28, 2017) ............................................ 19

*Arnold v. Dirrim*,
   398 N.E.2d 426 (Ind. Ct. App. 1979) ..................................................................... 17

*Aronoff v. Lenkin Co.*,
   618 A.2d 669 (D.C.1992) ........................................................................................ 28

*Banion v. Geovera Specialty Insurance Company*,
   2016 WL 7242536 (S.D. Tex. Dec. 15, 2016) ................................................... 22, 23

*Barnes v. First Am. Title Ins. Co.*,
   2006 WL 2265553 (N.D. Ohio Aug. 8, 2006) .................................................... 29, 30

*Birkholm v. Wash. Mut. Bank*,
   447 F. Supp. 2d 1158 (W.D. Wash. 2006) .............................................................. 30

*Blankenship v. Consolidation Coal Company*,
   850 F.3d 630 (4th Cir. 2017) .................................................................................. 24

*Blue Spike, LLC v. Texas Instruments, Inc.*,
   2014 WL 11848751 (E.D. Tex. July 25, 2014) ....................................................... 23

*Bort v. Parker*,
   42 P.3d 980 (Wash. App. Div. 2002) ...................................................................... 19

*Brean v. N. Campbell Prof'l Bldg.*,
   548 P.2d 1193 (Ariz. App. 1976) ............................................................................ 28

*Bridgeforth v. Jones*,
    2015 WL 336376 (Tenn. Ct. App. Jan. 26, 2015) .......................................................... 18, 20

*Brookshire v. Digby*,
    481S.E.2d 250 (Ga. App. 1997) .................................................................................................. 12

*Byung Ho Cheoun v. Infinite Energy, Inc.*,
    363 F. App'x 691 (11th Cir. 2010) ............................................................................................ 11

*Cannon v. Wells Fargo Bank, N.A.*,
    2014 WL 672687 (D. Md. Feb. 20, 2014) ................................................................................ 20

*Charles Griggs Bldg. Materials, Inc. v. Wong*,
    1989 WL 35470 (Tenn. App. Apr. 14, 1989) .......................................................................... 20

*Cistola v.Daniel*,
    266 Ga. App. 891 (2004) ............................................................................................................ 12

*Clark v. Aaron's, Inc.*,
    914 F. Supp. 2d 1301 (N.D. Ga. 2012) .................................................................................... 19

*Collins v. Davol, Inc.*,
    56 F. Supp. 3d 1222 (N.D. Ala. 2014) ..................................................................................... 14

*Connecticut Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*,
    2015 WL 4394408 (D. Md. July 15, 2015) .............................................................................. 21

*Crown, Cork & Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983) .................................................................................................................... 16

*Drelles v. Manufacturers Life Ins. Co.*,
    881 A.2d 822 (Pa. Super. Ct. 2005) ......................................................................................... 12

*Edwards v. Ocwen Loan Servicing, LLC*,
    24 F. Supp. 3d 21 (D.D.C. 2014) .............................................................................................. 27

*Escobar v. Wells Fargo Bank, N.A.*,
    2011 WL 6794032 (D. Ariz. Nov. 9, 2011) ............................................................................ 30

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
    726 F.3d 62 (2d Cir. 2013) ........................................................................................................... 8

*Frazer v. Millennium Bank, N.A.*,
    2010 WL 4269584 (D. Ariz. 2010) .......................................................................................... 14

*Fulton Land Co. v. Armor Insulating Co.*,
    192 Ga. 526 (1941) ..................................................................................................................... 26

*Geis Constr., Inc. v. Warren Concrete & Supply Co.*,
    2014 WL 4825882 (Ohio App. 11 Dist. Sept. 30, 2014) ....................................................... 18

iv

*Gibson v. Home Folks Mobile Home Plaza, Inc.*,
   533 F. Supp. 1211 (D.C. Ga. 1982) ................................................................ 12

*Gilmore v. M & B Realty Co., LLC*,
   895 So. 2d 200 (Ala. 2004) ........................................................................... 15

*Glaske v. Independent Bank Corp.*,
   2016 WL 298986 (Mich. App. Jan 21, 2016) ......................................... 19, 21

*Gray v. Liberty Nat. Life Ins. Co.*,
   623 So. 2d 1156 (Ala. 1993) ......................................................................... 15

*Hanna v. Plumer*,
   380 U.S. 460 (1965) ...................................................................................... 10

*Hoffman v. Gable*,
   1991 WL 260118 (Ohio Ct. App. Dec. 9, 1991) ........................................... 26

*Huerta v. Ocwen Loan Servicing, Inc.*,
   2010 WL 728223 (N.D. Cal. Mar. 1, 2010) .................................................. 26

*In re Aggrenox Antitrust Litigation*,
   2016 WL 4204478 (D. Conn. Aug. 9, 2016) .................................................... 9

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) .................................................................. 11

*In re Trilegiant Corp.*,
   11 F. Supp. 3d 82 (D. Conn. 2014) ............................................................... 11

*Int'l Fid. Ins. Co. v. W. Virginia Water Auth.*,
   2012 WL 2357368 (W.D. Va. June 20, 2012) ............................................... 25

*Jean v. Am. Home Mortg. Servicing, Inc.*,
   2012 WL 1110090 (N.D. Ga. Mar. 30, 2012) ............................................... 26

*JGD, LLC v. American Title Service Agency, LLC*,
   2011 WL 3475392 (Ariz. App. Aug. 9, 2011) ............................................... 25

*Jumbo v. Alabama State Univ.*),
   2017 WL 337994 (M.D. Ala. Jan. 23, 2017) ................................................ 29

*Kevelighan v. Trott & Trott, P.C.*,
   771 F. Supp. 2d 763 (E.D. Mich. 2010) ........................................................ 27

Landsman & Funk, P.C. v. Skinder-Strauss Associates,
   2012 WL 6622120 (D.N.J. Dec. 19, 2012) ..................................................... 9

*Lauren v. PNC Bank, N.A.*,
   2013 WL 5565511 (W.D. Pa. Oct. 8, 2013) .................................................. 27

*Lawry v. Palm*,
   192 P.3d 550 (Colo. App. 2008) ................................................................ 19, 20

*Liebergesell v. Evans*,
   93 Wn.2d 881 (Wash. 1980) .................................................................... 29

*Line v. Ventura*,
   38 So. 3d 1 (Ala. 2009) ......................................................................... 29

*Ling v. Webb*,
   834 N.E.2d 1137 (Ind. Ct. App. 2005) ..................................................... 17

*Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*,
   475 Fed. Appx. 496 (4th Cir. 2012) ......................................................... 24

*Lisk v. Lumber One Wood Preserving, LLC*,
   2015 WL 4139740 (11th Cir. July 10, 2015) ............................................ 3, 9

*Maganas v. Northroup*,
   135 Ariz. 573 (Ariz. 1983) ..................................................................... 25

*Maggard v. Essar Global Ltd.*,
   2015 WL 1780838 (W.D. Va. Apr. 20, 2015) ........................................... 24

*Makel v. Tredegar Trust Co.*,
   69 Va. Cir. 204 (Va. Cir. Ct. 2005) ......................................................... 24

*Manchester v. Ceco Concrete Const., LLC*,
   2014 WL 3738650 (W.D. Wash. July 28, 2014) ....................................... 22

*Matter of Arrieta*,
   105 N.M. 418 (N.M. 1987) ...................................................................... 26

*McIntosh v. IndyMac Bank, FSB*,
   2012 WL 176316 (D. Ariz. Jan. 23, 2012) ............................................... 30

*McMullen v. Ocwen Loan Servicing, LLC*,
   2017 WL 714347 (D.N.J. Feb. 23, 2017) ................................................. 26

*Meridian Title Corp. v. Pilgrim Fin.*, LLC,
   947 N.E.2d 987 (Ind. Ct. App. 2011) ....................................................... 25

*Montesi v. Nationwide Mut. Ins. Co.*,
   970 F. Supp. 2d 784 (W.D. Tenn. 2013) .................................................. 14

*Moore v. Bank of Fitzgerald*,
   225 Ga. App. 122 (1997) ........................................................................ 26

*Mora v. Koy*,
   2013 WL 2289887 (S.D. Tex. May 23, 2013) ........................................... 23

*Moreira v. Sherwood Landscaping Inc.*,
  2015 WL 1527731 (E.D.N.Y. Mar. 31, 2015) ........................................................ 8

*Morris v. Alle Processing Corp.*,
  2013 WL 3282948 (E.D.N.Y. June 27, 2013) ........................................................ 8

*Mt. Tai Asset Mgmt. Corp. v. Metro Equity Grp., LLC*,
  2011 WL 65863 (E.D. Mich. Jan. 10, 2011) ........................................................ 25

*Narramore v. HSBC Bank USA, N.A.*,
  2010 WL 2732815 (D. Ariz. July 7, 2010) ........................................................ 29

*Nat'l Bank of Wash. v. Equity Investors*,
  81 Wn.2d 886 (Wash. 1973) ........................................................ 26

*Newington Ltd. v. Forrester*,
  2008 WL 4908200 (N.D. Tex. Nov. 13, 2008) ........................................................ 23

*Ninth Dist. Production Credit Ass'n v. Ed Duggan, Inc.*,
  821 P.2d 788 (Colo. 1991) ........................................................ 20

*Odyssey (III) DP X, LLC v. PNC Bank, NA*,
  2014 WL 2050761 (N.D. Ala. Feb. 14, 2014) ........................................................ 30

*Ontiveros Insulation Co., Inc. v. Sanchez*,
  3 P.3d 695 (N.M. App. 2000) ........................................................ 19

*Osborne Enter., Inc. v. City of Chattanooga*,
  561 S.W.2d 160 (Tenn. Ct. App. 1977) ........................................................ 15

*Patetta v. Wells Fargo Bank, NA*,
  2009 WL 2905450 (D.N.J. Sept. 10, 2009) ........................................................ 26

*Pepi Corp. v. Galliford*,
  254 S.W.3d 457 (Tex. App. 1 Dist. 2007) ........................................................ 23

*Perron v. JP Morgan Chase Bank, N.A.*,
  2014 WL 931897 (S.D. Ind. Mar. 10, 2014) ........................................................ 27

*Ponder v. Bank of Am., N.A.*,
  2011 WL 8307207 (S.D. Ohio Mar. 8, 2011) ........................................................ 30

*Power Equip. Co. v. First Ala. Bank*,
  585 So. 2d 1291 (Ala. 1991) ........................................................ 29

*R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*,
  108 N.M. 84 (N.M. 1988) ........................................................ 29

*R.M. Harrison Mechanical Corp. v. Decker Industries, Inc.*,
  2008 WL 10669311 (Va. Cir. Ct. Aug. 28, 2008) ........................................................ 19, 22

*Raysoni v. Payless Auto Deals, LLC*,
   766 S.E.2d 24 (Ga. 2014) ................................................................... 12

*Royalty Network, Inc. v. Harris*,
   756 F.3d 1351 (11th Cir. 2014) ........................................................ 10

*Russell v. Household Mortg. Services*,
   2012 WL 2054388 (Tenn. Ct. App. 2012) ........................................ 15

*Sacks v. DJA Auto.*,
   2013 WL 210248 (E.D. Pa. Jan. 18, 2013) ...................................... 11

*Satterfield v. Ennis*,
   2008 WL 4649026 (D. Colo. Oct. 20, 2008) ................................... 20

*Schmidt v. Household Fin. Corp., II*,
   276 Va. 108 (Va. 2008) ................................................................... 24

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
   559 U.S. 393 (2010) ........................................................... 3, 7, 9, 10

*Shedd v. Wells Fargo Home Mortg., Inc.*,
   2015 WL 6479537 (S.D. Ala. Oct. 26, 2015) ................................. 26

*Sheldon v. Vilsack*,
   2011 WL 6371289 (E.D. Mich. Dec. 20, 2011) .............................. 29

*Smith v. Hilliard*,
   2014 WL 223668 (E.D. Tenn. Jan. 21, 2014) .................................. 15

*Spuhler v. Massachusetts Mutual Life Ins. Co.*,
   2015 WL 5970490 (Pa. Super. Ct. Oct. 1, 2015) ...................... 19, 22

Suchanek v. Sturm Foods, Inc,
   311 F.R.D. 239 (S.D. Ill. 2015) ...................................................... 10

*Sullivan v. Leor Energy, LLC*,
   600 F.3d 542 (5th Cir. 2010) ........................................................... 23

*Telfair v. First Union Mortg. Corp.*,
   216 F.3d 1333 (11th Cir. 2000) ...................................................... 27

*The Armored Grp., LLC v. Supreme Corp.*,
   2010 WL 2595280 (D. Ariz. June 24, 2010) ................................... 20

*The Christian Broad. Network, Inc. v. Busch*,
   2006 WL 2850624 (E.D. Va. Oct. 3, 2006) ..................................... 24

*Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*,
   2012 WL 1598130 (W.D. Va. May 4, 2012) ................................... 24

*Tonseth v. WaMu Equity Plus,*
    2012 WL 37406 (W.D. Wash. Jan. 9, 2012)..................................................... 30

*Toy v. Metropolitan Life Ins. Co.,*
    928 A.2d 186 (Pa. 2007) ................................................................................... 12

*USLife Title Co. v. Gutkin,*
    732 P.2d 579 (Ariz. Ct. App. 1986) ................................................................. 20

*Van Go LLC v. Potts,*
    2016 WL 4974968 (D. Ariz. June 7, 2016) ..................................................... 15

*Van Zanen v. Qwest Wireless, L.L.C.,*
    522 F.3d 112 (10th Cir. 2008) ......................................................................... 20

*Wagman v. Lee,*
    457 A.2d 401 (D.C. 1983) ................................................................................ 27

*Wallace v. Brice,*
    2015 WL 6410174 (Md. App. Oct. 21, 2015) .................................................. 19

*Wittman v. CB1, Inc.,*
    2016 WL 1411348 (D. Mont. Apr. 8, 2016) ...................................................... 9

*Yosemite Auto (Shanghai) Co., Ltd. v. JRS Metals, Inc.,*
    2016 WL 4441543 (S.D. Tex. Aug 23, 2016) .................................................. 23

**Statutes**

28 U.S.C. § 2072(b) ................................................................................................. 1

**Treatises**

RESTATEMENT OF RESTITUTION § 1 cmt. a (1937)...................................................... 14

RESTATEMENT OF RESTITUTION § 112 cmt. a (2005) ................................................... 15

**Rules**

FED. R. CIV. P. 8……………………………………………………………………………….3, 21

FED. R. CIV. P. 23……………………………………………………………….3, 7, 8, 9, 10, 11

**PROCEDURAL HISTORY**

Plaintiffs submit this Memorandum of Law in Opposition to the Motion to Dismiss Plaintiffs' Fourth Amended Class Action Complaint ("FAC" or "Complaint") and Strike Class Claims, made by Defendants Ocwen Loan Servicing, LLC ("Ocwen"), Cross Country Home Services, Inc. ("Cross Country"), and Sandra Finn ("Finn") (collectively, "Defendants"). On September 24, 2014, the Court issued a Memorandum & Order denying in substantial part Defendants' motion to dismiss the First Amended Complaint (ECF No. 42, hereafter, the "September 24, 2014 Order"). None of the claims that survived Defendants' first motion to dismiss—namely, Plaintiffs' claims under RICO, New York General Business Law § 349, California's Unfair Competition Law, New York's unjust enrichment law, and California's fiduciary duty law—are subject to Defendants' current motion.

The Fourth Amended Complaint, which Plaintiffs filed on April 14, 2017, alleges the following additional state law counts that were not in the First Amended Complaint: (1) Unjust Enrichment on behalf of a nationwide class or on behalf of the individual state classes under the laws of Alabama, Arizona, Colorado, Georgia, Indiana, Maryland, Michigan, New Mexico, Ohio, Pennsylvania, Tennessee, Texas, Virginia, and Washington—*Count III*; (2) Breach of Fiduciary Duty on behalf of a nationwide class or on behalf of the individual state classes under the laws of Alabama, Arizona, Georgia, Indiana, Michigan, New Jersey, New Mexico, Ohio, Virginia, and Washington—*Count IV*; (3) claims for violation of the consumer protection statutes of Alabama, Arizona, Colorado, Georgia, Indiana, Maryland, Michigan, New Jersey, New Mexico, Ohio, Pennsylvania, Tennessee, Texas, Virginia, and Washington—*Counts VII – XXIV*, and (4) a nationwide claim for common law fraud – *Count XXV*. The FAC also adds twenty-four plaintiffs from these additional jurisdictions.

As in Plaintiffs' First Amended Complaint, the alleged wrongdoers are Defendants Ocwen, Plaintiffs' Florida-based mortgage loan servicer; Cross Country, a home warranty company also based in Florida which teamed up with Ocwen to gain access to the mortgage company's customer base; and Cross Country's president, Sandra Finn.

Defendants' Motion to Dismiss and to Strike Class Claims was served on May 15, 2017. In a June 6 conference the Court determined that due to the improper timing of Defendants' Motion to Strike Class Claims, Plaintiffs need only respond to Defendants' Motion to Dismiss the Fourth Amended Complaint.

## PRELIMINARY STATEMENT

For the reasons discussed below, Defendants' motion to dismiss Plaintiffs' FAC should be denied in its entirety.  Defendants have adopted a blunderbuss approach in seeking to dismiss several of the additional Plaintiffs' consumer protection counts, as well as all of their unjust enrichment and breach of fiduciary duty claims.  In asserting such arguments, Defendants both ignore the well-pleaded allegations in the FAC and misconstrue the applicable case law. Moreover, many of Defendants' arguments are not addressed to the legal sufficiency of the pleaded claims but rather seek to argue their merits, which is improper on a motion to dismiss.

Defendants also make no mention of the fact that they have not moved to dismiss all of the additional Plaintiffs' claims; accordingly, the following state law claims will remain in the FAC notwithstanding Defendants' motion:  i.e. consumer fraud claims from Colorado, Georgia, Maryland, Michigan, New Jersey, New Mexico, Ohio, Texas, Virginia, Washington, and the nationwide common law fraud claim—*Counts IX, XI, XIV–XIX, XXII-XXV*.

In this brief, Plaintiffs respond to Defendants' specific arguments as follows:

*First*, Plaintiffs are not barred from pursuing their Alabama, Georgia, and Tennessee consumer protection claims as a class action because in light of the Supreme Court's holding in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) and the Eleventh Circuit's decision in *Lisk v. Lumber One Wood Preserving, LLC*, No. 14 Civ. 11714, 2015 WL 4139740 (11th Cir. July 10, 2015), the clear weight of authority holds that FED. R. CIV. P. 23 preempts conflicting state procedural limitations.

*Second*, Plaintiffs from Georgia and Pennsylvania need only allege reasonable or actual reliance upon Defendants' deceptive conduct, which they indisputably have done. Contrary to Defendants' claim, there is no requirement that Plaintiffs must allege having been "aware" of Defendants' scheme, particularly where the success of the scheme depends upon Plaintiffs' ignorance. Moreover, justifiable reliance is a question that Georgia and Pennsylvania courts consistently leave to the finder of fact.

*Third*, the Alabama, Arizona, Indiana, and Tennessee Plaintiffs' claims are not time-barred. These states' statutes of limitations are subject to a discovery rule or equitable tolling that cannot be resolved on a motion to dismiss.

*Fourth*, Defendants' various arguments regarding Plaintiffs' claims for unjust enrichment are without merit. Contrary to Defendants' contentions, the FAC specifically denies the existence of enforceable contracts between Plaintiffs and Cross Country. Further, a plaintiff need not establish the absence of adequate legal remedies at the pleading stage because FED. R. CIV. P. 8 permits pleading in the alternative. Defendants also may not rely on the "benefit of the bargain" defense where the payments they have unjustly retained were procured through fraud.

*Fifth* and finally, Plaintiffs have pled viable claims for breach of fiduciary duty. Ocwen abused its role as Plaintiffs' escrow agent to perpetrate Defendants' fraud. Jurisdictions across

the country hold that parties acting as escrowees are fiduciaries.  Moreover, the laws in several of

the newly added jurisdictions are akin to the California count already sustained by the Court.

Each of these states' laws adopt an expansive definition of fiduciary relations and provide that a

lender owes fiduciary duties where, as here, the parties' dealings extend beyond an ordinary

borrower-lender relationship.

## BACKGROUND

### A.      The Parties

Ocwen is a loan servicing company that services more than 600,000 residential home

loans across the country.  (FAC ¶ 44.)  Ocwen's customers included the twenty-eight Plaintiffs.

(*Id*. ¶¶ 18-43.)  Cross Country is a corporation that sells home warranty programs and other

home appliance service and maintenance plans to homeowners across the United States.  (*Id*. ¶

45.)  Cross Country and its President, Defendant Sandra Finn, market and sell these plans

through various subsidiaries and affiliate companies they control that operate in states across the

country.  (*Id*. ¶¶ 46-51.)  To seek out new customers, Cross Country partners with businesses that

have large customer bases.  (*Id*. ¶ 52.)  On its website, Cross Country claims that its plans and

other "add-on products" can "increase revenue" for its potential partners.  (*Id*. ¶ 59.)  Ocwen was

one such partner. (*Id*. ¶ 53.)

### B.      Defendants' Check Solicitation Scheme

As alleged in the FAC, a check solicitation scheme is a tactic used to extract recurring

payments from consumers for home warranty and service plans they don't know they are

purchasing.  (*Id*. ¶ 4.)  Defendants' scheme began with Cross Country flooding the mails with

millions of small dollar checks designed to look like a refund or rebate related to consumers'

Ocwen-serviced mortgages.  (*Id*. ¶ 1.)  Unbeknownst to the more than 55,000 homeowners

victimized by the scheme, when consumers cashed the checks Defendants deemed them to have

enrolled in Cross Country's plans. (*Id.*) Ocwen then billed for the plans by adding a small line item to its customers' mortgage statements, which Class members unsuspectingly paid when they made their monthly mortgage payments. (*Id.*) Ocwen then handed these "premiums" to Cross Country, who in turn kicked back a percentage to Ocwen as compensation for its role in the scheme. (*Id.*)

Plaintiffs allege that as early as 2007, Cross Country and Finn sent check solicitations to Ocwen's customers in New York, California, and sixteen other states (the "solicitation(s)"). (*Id.* ¶¶ 60-62.) The solicitations were delivered via an envelope bearing the words "CHECK ENCLOSED" in large print on the front. (*Id.* ¶ 62.) Situated under Ocwen's logo in the upper left corner, the return address lists "Ocwen" and a post office box address in Fort Lauderdale, Florida. (*Id.* ¶ 66.) Cross Country's name or logo does not appear on the envelope. (*Id.*) The envelope is addressed to the Ocwen customer by name. (*Id.* ¶¶ 66-67.) Enclosed is a valid, negotiable check made out to the Ocwen customer for a small amount such as $2.50. (*Id.* ¶ 69.)

The payor on the front of the check is listed in small print as "CCHS" accompanied by a post office box address also in Fort Lauderdale. (*Id.*) The last three digits of the post office box number on the check differ from those in the envelope's return address, but the addresses are otherwise the same. (*Id.* ¶¶ 66-69.) Although difficult to read, Defendant Finn's signature appears at the bottom of the check above the words "authorized signature." (*Id.* ¶ 70.) Neither the envelope nor the check is labeled as a solicitation, and there is no mention on either that the source of the check is from an unknown company, Defendant Cross Country, not Plaintiffs mortgage company. (*Id.* ¶ 65.) Nothing on the front of the check discloses that by cashing or depositing the check the customer will be subject to a monthly fee. (*Id.* ¶¶ 70-72.)

The back of the check contains miniscule print describing a monthly automatic charge. (*Id*. ¶ 78).  This entire message is located in the small area above the endorsement line.  (*Id*.)  It does not reference Cross Country, the purported contractual counter-party.  Upon cashing or depositing the check, unsuspecting Ocwen customers are enrolled in a Cross Country home warranty plan for a so-called 30-day review period.  (*Id*. ¶ 86, 88.)  Although an ad enclosed with the check claims that the customer will receive a service agreement within seven to ten days of cashing the check, Plaintiffs allege that none of them ever received any such agreement, and further allege that Cross Country does not always send information about the plan during the review period.  (*Id*.)

After the trial period, the customer is enrolled in an annual membership for which Cross Country assesses a monthly fee.  (*Id*. ¶¶ 88.)  Ocwen bills these charges as an inconspicuous line item on the customer's mortgage statements and sometimes refers to the fees in its escrow statements.  (*Id*. ¶ 89.)

Ocwen's bills and notices variously list the fees as "optional insurance," "home warranty," "Systems MD Gold," or other names that do not clearly indicate what the charges are for, or that the money will be split between Ocwen and Cross Country.  (*Id*. ¶ 90.)  Plaintiffs claim that Defendants knew customers did not realize they were enrolling and subsequently did not use the limited benefits of the plans.  (*Id*. ¶ 95.)  Plaintiffs allege that Defendants worked together to intentionally deceive Ocwen customers into enrolling in Cross Country's warranty plans (*Id*. ¶¶ 1-10), and then shared the fees collected from enrolled customers. (*Id*. ¶ 6.)

<u>ARGUMENT</u>

I.   **THE COMPLAINT ADEQUATELY ALLEGES CONSUMER PROTECTION CLAIMS UNDER THE LAWS OF ALABAMA, ARIZONA, GEORGIA, INDIANA, PENNSYLVANIA AND TENNESSEE**

Plaintiffs' consumer protection claims under these states' laws are adequately pleaded and Defendants' motion to dismiss them should be denied.

**A.   Plaintiffs' Alabama, Georgia, and Tennessee Claims May Be Pursued as a Class Because FED. R. CIV. P. 23 Controls**

Defendants argue that Plaintiffs' claims for violation of the Alabama Deceptive Trade Practices Act ("ADTPA"), the Georgia Fair Business Practices Act ("GFBPA") and the Tennessee Consumer Protection Act ("TCPA") should be dismissed on the ground that these statutes prohibit class actions.  (Mem. of Law in Supp. of Defs.' Mot. To Dismiss the FAC ("Defs.' Br.") 18-19.)  Under the clear weight of authority, however, Rule 23 preempts these state procedural limitations and thus permits pursuing these claims on a class-wide basis in this federal lawsuit.

The Rules Enabling Act provides that a federal rule governs in any federal lawsuit and preempts any conflicting state provision, so long as the federal rule does not "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  "By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."  *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398 (2010).  Thus, where Rule 23 is authorized under the Rules Enabling Act, a party in a federal lawsuit may pursue claims on behalf of a class—irrespective of state procedural rules to the contrary.

In the leading case, *Shady Grove*, which Defendants inexplicably ignore despite the parties' having already briefed this exact issue on Defendants' motion to dismiss the Third

Amended Complaint (*see* ECF No. 92-5 at pp. 11-14), the United States Supreme Court

addressed the issue of whether a class action could proceed in federal court based upon the

violation of New York's consumer fraud statute that permits recovery of statutory penalties

where New York state law otherwise prohibited class actions for claims seeking such penalties.

The Supreme Court held that Rule 23 controlled because applying that rule to allow a class

action for a statutory penalty created by New York law did not "abridge, enlarge, or modify a

substantive right." 559 U.S. at 408, 436.[1]  The Second Circuit has since adopted Justice Scalia's

plurality opinion (in which he held that Rule 23 always falls within the authorization of the Rules

Enabling Act) in articulating the distinction between "substantive" and "procedural" rules:

> Recently, a plurality of the Supreme Court instructed that we should consider a
> rule 'substantive' for the purposes of the Rules Enabling Act if it 'alters the rules
> of decision by which the court will adjudicate those rights.' A rule is 'procedural,'
> in contrast, if it 'governs only the manner and the means by which the litigants'
> rights are enforced.'

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 83 (2d Cir. 2013).

Courts in this Circuit have consistently followed suit and hold that Rule 23 preempts state

statutes prohibiting or limiting recovery in class actions.  *See, e.g.*, *Moreira v. Sherwood*

*Landscaping Inc.*, No. 13 Civ. 2640 (AKT), 2015 WL 1527731, at *6 (E.D.N.Y. Mar. 31, 2015)

(relying on *Shady Grove* in a supplemental jurisdiction case to hold that Rule 23 preempts a New

York rule barring class action plaintiffs from seeking liquidated damages); *Morris v. Alle*

*Processing Corp.*, No. 08 Civ. 4874 (JMA), 2013 WL 3282948, at *1 (E.D.N.Y. June 27, 2013)

(rejecting argument that *Shady Grove* holding is limited to diversity jurisdiction cases and

finding class claims under New York state law appropriate for certification despite express ban

on class actions seeking liquidated damages under New York law); *In re Aggrenox Antitrust*

---

[1] Justice Scalia authored a plurality opinion for four justices, while Justice Stevens concurred separately.

*Litigation*, No. 14 MD 2516 (SRU), 2016 WL 4204478, at *6 (D. Conn. Aug. 9, 2016) (denying

motion to dismiss class claims under the Illinois Antitrust Act, which prohibits class actions by

indirect purchasers, and refusing to find the bar "sufficient to alter the scope of a substantive

right or remedy, because any indirect purchaser procedurally blocked from participation in a

class action would still have the same remedy in an individual action.").[2]

In addition to this clearly applicable case law from the Second Circuit, the Eleventh

Circuit in *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) expressly

rejected the very same argument advanced by Defendants in the case at bar.  In a cogent, well-

reasoned decision, the Eleventh Circuit found that under the Supreme Court's holding in *Shady*

*Grove*, violations of the ADTPA—one of the consumer protection statutes at issue here—can be

maintained as a class action in federal court since Rule 23 displaces the state procedural

limitation prohibiting such class actions.  *Id.* at 1334-38.  In reversing the lower court's dismissal

of the ADTPA claim, the Eleventh Circuit reasoned as follows:

> The holding [in *Shady Grove*] controls our case.  There is no relevant, meaningful
> distinction between a statutorily created penalty of the kind at issue in *Shady*
> *Grove*, on the one hand, and a statutorily created claim for deceptive practices of
> the kind at issue here, on the other hand.  Each is a creature of state law.  For
> each, state law allows an injured person to seek redress in an individual action but
> precludes the person from maintaining a class action.
>
> * * *
>
> On any view, the only issue is whether, as applied here, Rule 23 abridges,
> enlarges, or modifies a "substantive right."  28 U.S.C. § 2072(b).  A "substantive

---

[2] The same is true of courts in other Circuits.  *See, e.g.*, *Wittman v. CB1, Inc.*, No. 15 Civ. 105 (BLG)
(SPW) (CSO), 2016 WL 1411348, at *8 (D. Mont. Apr. 8, 2016) (denying motion to dismiss claim under
Montana Consumer Protection statute prohibiting class actions because it is preempted by Rule 23);
*American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 546 (6th Cir. 2014)
(holding that Michigan court rule limiting class actions is preempted by Rule 23); *Landsman & Funk,*
*P.C. v. Skinder-Strauss Associates*, No. 08 Civ. 3610 (KSH), 2012 WL 6622120, at *7 (D.N.J. Dec. 19,
2012) (denying motion to dismiss class action and holding that Rule 23, not state law, controls the
question of whether the complaint can be maintained as a class action).

right" is one that inheres in "the rules of decision by which [the] court will adjudicate [the petitioner's] rights." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1361 (11th Cir. 2014) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)). [Defendant's] substantive obligation was to comply with the ADTPA—to make only accurate representations about its product. The substantive right of [plaintiff] and other buyers was to obtain wood that complied with [Defendant's] representations. These are the 'rules of decision' that will govern the ADTPA claim. Under Alabama law, [plaintiff] and other buyers were and are entitled to seek redress. *Rule 23 alters these substantive rights and obligations not a whit; with or without Rule 23, the parties have the same substantive rights and responsibilities.* The disputed issue is not whether [plaintiff] and other buyers are entitled to redress for any misrepresentation; they are. The disputed issue is only whether they may seek redress in one action or must instead bring separate actions . . . *Because Rule 23 does not "abridge, enlarge or modify any substantive right," Rule 23 is valid and applies in this action.*

*Id*. at * 4-6 (emphases added).[3]

Moreover, following the *Lisk* decision, the district court in *Suchanek v. Sturm Foods, Inc.* relied on both *Shady Grove* and *Lisk* to hold that Rule 23 trumped state law prohibitions on class actions under *both* the Alabama and Tennessee consumer protection statutes. 311 F.R.D. 239, 264 (S.D. Ill. 2015) ("The rationale by which the Eleventh Circuit arrived at its decision in *Lisk* convinces this Court that Rule 23 controls over the Alabama proscription on class actions.").

There is no reason to depart from precedent here because the Eleventh Circuit's holding in *Lisk* applies with equal force to the facts before us. Under the ADTPA, GFBPA, and TCPA,

---

[3] The Eleventh Circuit also rejected as illogical the argument that the state prohibition should be deemed substantive, and thus controlling, where it is contained in the consumer protection statute itself. Although the class action prohibition in *Shady Grove* was contained in a separate New York procedural statute addressing class actions generally, the Eleventh Circuit held this was a distinction without a difference: "[H]ow a state chooses to organize its statutes affects the analysis not at all. Surely the New York legislature could not change the *Shady Grove* holding simply by reenacting the same provision as part of the statutory-interest statute. Surely an identical ban on statutory-interest class actions adopted by another state would not override Rule 23 just because it was placed in a different part of the state's code. The goal of national uniformity that underlies the federal rules ought not be sacrificed on so insubstantial a ground. And more importantly, the question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance—not on the placement of a statute within a state code." *Id.* at * 4.

Defendants' substantive obligation was to refrain from engaging in deceptive or unfair business practices with respect to their sale of home warranty plans.  Applying Rule 23 to permit class-wide adjudication of Defendants' violations of these statutes does not abridge the parties' substantive rights and obligations in any sense of the word.  Thus, because the class action exclusions in these state statutes "govern[] only the manner and the means by which the litigants' rights are enforced," *Fed. Treasury Enter.*, 726 F.3d at 83, and not the substance by which those rights will be decided, they are merely procedural in nature and are preempted by Rule 23.[4]

## B.   Plaintiffs Have Alleged Justifiable Reliance Under the Consumer Protection Statutes of Georgia and Pennsylvania

Defendants erroneously claim that Plaintiffs fail to plead the element of justifiable reliance because Plaintiffs "had the opportunity to determine the accuracy of their assumptions about the check by simply reading it before depositing it."  (Defs.' Br. 19-20.)  However, the consumer protection statutes of Georgia and Pennsylvania are designed to protect consumers from fraudulent and deceptive business practices.  As such, all that is required is the allegation that Plaintiffs reasonably relied upon ***Defendants' deceptive conduct***—not that Plaintiffs knew Defendants were perpetrating a scheme.[5]

Indeed, contrary to Defendants' assertion that Plaintiffs' Pennsylvania consumer protection claims must fail due to Plaintiffs' failure to discover Defendants' well-concealed

---

[4] Defendants' cases are distinguishable from the instant case.  The court in *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 112 (D. Conn. 2014) did not perform a *Shady Grove* analysis where the state law in question created a residency requirement for class action plaintiffs under the Connecticut Unfair Trade Practices Act.  *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 160-61 (S.D.N.Y. 2008) was decided prior to *Shady Grove*.

[5] *See, e.g.*, *Byung Ho Cheoun v. Infinite Energy, Inc.*, 363 F. App'x 691, 694-695 (11th Cir. 2010) (Georgia FBPA requires "reliance on the deception"); *Sacks v. DJA Auto.*, No. 12 Civ. 284, 2013 WL 210248, at *11 (E.D. Pa. Jan. 18, 2013) (Pennsylvania UTPCPL simply requires "justifiable reliance on defendant's alleged misrepresentation or deceptive conduct").

fraud, the Supreme Court of Pennsylvania has expressly held that "imposing upon [a plaintiff] a duty to investigate the falsity of the misrepresentations upon which he brings suit [. . .] overrides the law that we have developed over the years for the determination of the element of justifiable reliance in this area." *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007). Explaining further, the court noted that "a party who engages in intentional fraud should be made to answer to the party he defrauded, even if the latter was less than diligent in protecting himself in the conduct of his affairs. . . . The law is not designed to protect the vigilant alone . . . but is intended as a protection to even the foolishly credulous." *Id.* (internal citations and quotations omitted). Similarly, Georgia courts recognize that "[t]he scope of the defrauded party's duty to discover, as defined by the 'ordinary,' 'reasonable' or 'due,' diligence standard, does not go so far as to require the exhaustion of all available means to ascertain the truth of the representations." *Gibson v. Home Folks Mobile Home Plaza, Inc.*, 533 F. Supp. 1211, 1216 (D.C. Ga. 1982); *Brookshire v. Digby,* 224 Ga. App. 512, 517 (1997) (noting that fraud could arise where the defendant's misrepresentations defeated further inquiry or diligence); *Cistola v. Daniel,* 266 Ga. App. 891, 895 (2004) (same).

Moreover, courts in both Georgia and Pennsylvania have consistently found that justifiable reliance is a question of fact for the jury to decide. *See, e.g., Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 841 (Pa. Super. Ct. 2005) ("[T]he issue of justifiable reliance cannot be resolved without considering the relationship of the parties involved and the nature of the transaction."); *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d at 208 ("[I]t is for the jury to decide whether the falsity of [Defendant's] alleged misrepresentations . . . was obvious to [Plaintiff] and whether her reliance was unjustified."); *Raysoni v. Payless Auto Deals, LLC*, 766 S.E.2d 24, 27 (Ga. 2014) (same); *Gibson v. Home Folks Mobile Home Plaza, Inc.*, 533 F. Supp. at 1216 ("[A]s

12

recognized by Georgia appellate courts, questions of whether the defrauded party could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury.") (internal quotations and citations omitted).

Here, Plaintiffs amply pled reliance on Defendants' checks, including, *inter alia*, that Plaintiffs believed Defendants' representation that the check was from Ocwen, a party with which they had an existing business relationship (*see, e.g.*, FAC, ¶¶ 2, 61, 64-79, 99, 258), that they were misled by the design of the checks into thinking that they were small-sum adjustments related to their Ocwen-serviced mortgage[6] (*see, e.g.*, *id*. ¶¶ 11, 62, 64, 70, 148, 153, 199, 204, 295), and that they did not know the meaning of the line items that began appearing on their mortgage statements once they deposited the checks (*see, e.g.*, *id*. ¶¶ 89, 92, 103, 115).

Because Plaintiffs have alleged that they reasonably and actually relied upon Defendants' wrongful and deceptive conduct, they have adequately pled the element of reliance under Georgia and Pennsylvania consumer protection law.

### C. Defendants' Statute of Limitations Arguments Asserted Against the Alabama, Arizona, Indiana, and Tennessee Consumer Protection Claims are Premature On a Motion to Dismiss

Defendants' argument that certain of Plaintiffs' consumer protection claims are time-barred as a matter of law must be rejected. Because Defendants' statute of limitations defenses are subject to a "discovery" rule or the doctrine of equitable tolling that necessarily involves fact-specific inquiries.

---

[6] Plaintiff Hendricks even noted the deposit in her checkbook as a "refund from Ocwen escrow" (*id*. ¶ 14.)

### i. Plaintiffs' Alabama, Arizona, and Tennessee Consumer Protection Claims Are Subject to a Discovery Rule Requiring Fact-Specific Inquiries

Defendants assert that Plaintiffs' consumer protection claims under these three states' laws are time-barred because Defendants first billed the relevant Plaintiffs more than one year before these Plaintiffs sued.  (Defs.' Br. 20-22).  Defendants' claim is based on their curious theory that Plaintiffs were "on notice" of Defendants' unlawful conduct the first time Ocwen sent them a mortgage statement with a misleading and inconspicuous line item charge for Cross Country's plans.  Defendants ignore the FAC's well-pleaded allegations.  These allegations make clear that because a central component of Defendants' fraud was deceptive billing, including misleadingly billing for Cross Country's fees as inconspicuous and vague line items on Plaintiffs' Ocwen mortgage statements, Plaintiffs were kept in the dark regarding Defendants' scheme.  (FAC ¶¶ 88-94; *see also* ¶¶ 124 (Alabama Plaintiffs); 129 (Arizona Plaintiff); 134 (Arizona Plaintiff); 139 (Arizona Plaintiff); 210 (Tennessee Plaintiff)).

As Defendants expressly acknowledge in their brief, all three of these jurisdictions have adopted a discovery rule for purposes of the statute of limitations which holds that a claim will not begin to accrue until such time as the plaintiff knew or should have ***reasonably discovered*** the deceptive or fraudulent practices.  *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1227 (N.D. Ala. 2014) (claim accrues when "the aggrieved party discovers or, in the exercise of reasonable care, should have discovered, the facts constituting the fraud"); *Frazer v. Millennium Bank, N.A.*, No. 10 Civ. 01509 (JWS), 2010 WL 4269584, at *3 (D. Ariz. 2010) ("[T]he statute of limitations begins running when the defrauded party discovers or with reasonable diligence could have discovered the fraud") (internal quotations and citations omitted); *Montesi v. Nationwide Mut. Ins. Co.*, 970 F. Supp. 2d 784, 789 (W.D. Tenn. 2013) (claim accrues "when the plaintiff knows

14

or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant") (internal citation omitted).[7]

Moreover, as Defendants fail to mention, courts in Alabama, Arizona, and Tennessee also uniformly hold that determinations regarding the "reasonableness" of a plaintiff's discovery of the fraud or deception requires factual determinations that should be reserved for the trier of fact. *Adams v. Smith*, No. 97 Civ. 216 (PHX) (ROS), 2006 WL 3802371, at *6 (M.D. Ala. Dec. 22, 2006) ("[T]he conflicting dates given by [the parties] as to when Plaintiff had actual knowledge of the facts underlying the fraud gives rise to a factual question best left to a jury."); *Van Go LLC v. Potts*, No. 16 Civ. 00054 (PHX) (JJT), 2016 WL 4974968, at *3 (D. Ariz. June 7, 2016) ("Plaintiff's allegations support a plausible inference that its delayed discovery was reasonable, and the question of when discovery should have occurred is thus a matter for the trier of fact."); *Russell v. Household Mortg. Services*, No. M2008-01703-COA-R3-CV, 2012 WL 2054388, at *5-6 (Tenn. Ct. App. 2012) (same).  As the Court in *Osborne Enter., Inc. v. City of Chattanooga*, 561 S.W.2d 160 (Tenn. Ct. App. 1977) explained:

> [t]he time of the accrual of the cause of action, as affecting the running of the statute of limitations, is frequently a question of fact to be determined by the jury or trier of fact under the evidence, as where the evidence is conflicting or the time is not clearly provided and is a matter of inference from the testimony . . .

*Id.* at 165.

---

[7] Defendants cite two cases that are clearly distinguishable from the instant case in which Plaintiffs did not fill out any paperwork or applications for Cross Country warranty plans.  In *Gray v. Liberty Nat. Life Ins. Co.*, 623 So. 2d 1156, 1159 (Ala. 1993), the plaintiff failed to discover allegedly fraudulent charges until *twelve years* after he signed an application for a second insurance policy and paid an initial premium to an insurance agent.  Similarly, in *Smith v. Hilliard*, No. 11 Civ. 172 (TAV) (HBG), 2014 WL 223668, at *6 (E.D. Tenn. Jan. 21, 2014), the plaintiff delayed filing suit for mismanagement of a trust until over *ten years* after she signed annuity applications and agreed to the disputed investment choices.

Based on the FAC's allegations, a finder of fact could easily determine that the Alabama, Arizona, and Tennessee Plaintiffs could only have reasonably discovered their claim within the applicable limitations period.  Accordingly, in the absence of discovery, Defendants' motion must be denied as premature and inappropriate at this juncture.

> ii.     **Plaintiff Wisnewski's Indiana Consumer Protection Claims Were Tolled When the Prior Indiana Plaintiffs Joined this Lawsuit on November 20, 2014.**

The FAC alleges that Indiana Plaintiff Wisnewski was billed for approximately thirteen months before he noticed the irregular charge on his mortgage statement and first complained to Ocwen and Cross Country around July 2014.  (FAC ¶ 165.)  Defendants assert that this claim is time-barred under Indiana's two-year statute of limitations.  (Defs.' Br. 21-22.)  Yet Defendants ignore the well settled law that the filing of a previous class action tolls absent class members' claims until class certification is denied.  This rule was first enunciated by the United States Supreme Court in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  In an effort to further the policies behind the class action device—i.e., the promotion of efficiency and economy of litigation—the Justices held that "the *commencement of a class action* suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* (emphasis added).  In so ruling, the Justices noted for example, that limitations periods are intended to apprise defendants of adverse claims and to prevent plaintiffs from sleeping on their rights, both of which are satisfied when a class action is commenced.  *Id.  American Pipe* also observes that, because a class action complaint notifies the defendants of the substantive claims they face, as well as the number of absent class members who may participate in the judgment, the defendants will be on notice of their duty to preserve evidence related to the claims of all class members.  *Id.* at 555; *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353 (1983).  Given *American Pipe*'s

unassailable logic, it is no surprise that Indiana courts long ago adopted *American Pipe* tolling for claims sounding under Indiana law. *Arnold v. Dirrim*, 398 N.E.2d 426, 440 (Ind. Ct. App. 1979); *see also Ling v. Webb*, 834 N.E.2d 1137, 1142 (Ind. Ct. App. 2005) (same); *In re: Linerboard Antitrust Litig.*, 223 F.R.D. 335, 349 (recognizing Indiana as following *American Pipe* as to state law claims).

Here, the original Indiana Plaintiffs Derek and Katelyn Willis filed identical state law claims on November 20, 2014. (Second Amended Complaint, ECF No. 53). Defendants cannot dispute that Mr. Wisnewski discovered that he was a Cross Country "customer" around July 2014. (FAC ¶ 165.) Accordingly, and by virtue of *American Pipe* tolling, Mr. Wisnewski's claims are timely.[8]

## II. PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT AND BREACH OF FIDUCIARY DUTY ARE VIABLE

### A. Plaintiffs' Claims For Unjust Enrichment Are Viable

Defendants assert several grounds for why Plaintiffs' claims for unjust enrichment should be dismissed, each of which is unavailing.

#### i. Plaintiffs' Complaint Disputes the Existence of Any Enforceable Contracts

Defendants' contention that Plaintiffs' claims for unjust enrichment are unavailable due to contracts between Plaintiffs and Cross Country (Defs.' Br. 22-24) fails on several grounds.

---

[8] Defendants' claim that Mr. Wisnewski's claim is also barred because he does not meet the condition precedent to bringing suit (Defs.' Br. 22, n.15) ignores the fact that prior Indiana Named Plaintiffs Derek and Katelyn Willis sent Defendants a letter complying with IND. CODE § 24-5-0.5-5(a). Defendants did not respond to the Willis Plaintiffs' letter and have thus failed to provide relief for their "curable" acts towards Plaintiff Wisnewski and the Indiana Class within the requisite time period. Plaintiff Wisnewski therefore has standing to seek all damages and relief to which he and the Indiana Class are entitled. FAC ¶ 90.

As made clear by the case law cited by Defendants on pp. 20-22 of their moving brief, the existence of an express contract bars a claim for unjust enrichment only where such contract is ***valid and enforceable***.  Defendants' argument disregards the FAC's well-pleaded allegations that any purported contracts were procured through fraud and are thus either void or unenforceable.  *See* September 24, 2014 Order at 44 (accepting as true "Plaintiffs' allegations that they do not have a valid contract with Cross Country"); FAC ¶ 288 ("Members of the Class do not have a valid contractual relationship with Cross Country and Sandra Finn because any contracts purportedly entered into by the Class were procured through the deceptive Check Solicitation Scheme and are invalid under the laws of New York and 16 other states where Plaintiffs reside."); *see also* Pls.' Mem. of Law In Opp'n. to Def. Cross Country Home Services' Mot. to Stay and Compel Arbitration, § I.A.[9]  Defendants' argument also ignores the fact that Defendants themselves recently gave up trying to prove that the contracts were valid and enforceable, following more than two years of briefing and trial preparation on the matter.

Because "[t]he threshold question concerning an unjust enrichment claim is whether an enforceable contract exists that governs the subject matter," and such matters "cannot be concluded from the [FAC]" (September 24, 2014 Order at 45), Defendants' motion must be denied.  *See also, e.g.*, *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 WL 336376, at *24 (Tenn. Ct. App. Jan. 26, 2015) (reversing summary dismissal of unjust enrichment claim where there was a genuine issue of fact as to whether a valid contract existed between the parties); *Geis Constr., Inc. v. Warren Concrete & Supply Co.*, No. 2014 T 0014, 2014 WL 4825882, at *5 (Ohio App. 11 Dist. Sept. 30, 2014) (same); *AOR Direct L.L.C. v. Buteo, LLC*,

---

[9] Defendants' desultory claim that Plaintiffs do not dispute receiving their contracts (Defs.' Br. 24, n.18) ignores Plaintiffs' allegation that these so-called "contracts" were designed to look like junk mail and that Plaintiffs therefore either overlooked them or never received them in the first place.  (FAC ¶ 266.)

No. 1 CA-CV 15-0754, 2017 WL 1150671, at *6 (Ariz. App. Div. March 28, 2017) (same); *Bort v. Parker*, 42 P.3d 980, 991 (Wash. App. Div. 2002) (same); *Spuhler v. Massachusetts Mutual Life Ins. Co.*, No. 911 MDA 2014, 2015 WL 5970490, at *5 (Pa. Super. Ct. Oct. 1, 2015) (same); *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1310 (N.D. Ga. 2012) (same); *Wallace v. Brice*, No. 1248, Sept. Term, 2014, 2015 WL 6410174, at *7 (Md. App. Oct. 21, 2015) (same); *Glaske v. Independent Bank Corp.*, No. 323167, 2016 WL 298986, at *10 (Mich. App. Jan 21, 2016) (affirming refusal to dismiss unjust enrichment claim where the contract in question is found invalid); *R.M. Harrison Mechanical Corp. v. Decker Industries, Inc.*, No. CL08-193, 2008 WL 10669311, at *8 (Va. Cir. Ct. Aug. 28, 2008) ("The demurrer stage is too early to address such factual considerations as whether an adequate remedy at law existed between the parties."). *See also Ambrose v. Dalton Const., Inc.*, 51 N.E.3d 320, 322 (Ind. App. 2016) ("[I]n the absence of a contract, a party may still recover under a theory of unjust enrichment."); *Lawry v. Palm*, 192 P.3d 550, 564 (Colo. App. 2008) (same); *Ontiveros Insulation Co., Inc. v. Sanchez*, 3 P.3d 695, 698–99, (N.M. App. 2000) (same).

Finally, the Court's prior holding that, "the court is in no position to determine the validity or effect of the contracts referenced in the parties' arguments" (September 24, 2014 Order at 44), remains in force and further disposes of this argument.

### ii. Defendants May Not Invoke the "Benefit of the Bargain" Where They Have Unjustly Retained Payments Procured Through Fraud

Defendants also assert that the unjust enrichment claims should be dismissed because Plaintiffs "received the benefit of their bargain," namely, the coverage provided by Cross Country's home warranty plans. (Defs.' Br. 24.)

This argument is nonsensical. Unjust enrichment asks whether under the circumstances it would be inequitable or unconscionable for the defendant to retain the benefit it has procured.

19

"The concept of unjust enrichment centers attention on the prevention of injustice." *Satterfield v. Ennis*, No. 08 Civ. 00751 (ZLW) (CBS), 2008 WL 4649026, at *2 (D. Colo. Oct. 20, 2008) (citing *Ninth Dist. Production Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 795 (Colo. 1991)). It is axiomatic that, "[a] person is unjustly enriched if he has received a benefit and retention of the benefit would be unjust." *The Armored Grp., LLC v. Supreme Corp.*, No. 09 Civ. 414 (PHX) (NVW), 2010 WL 2595280, at *7 (D. Ariz. June 24, 2010) (citing RESTATEMENT OF RESTITUTION § 1 cmt. a (1937)); *Bridgeforth v. Jones*, 2015 WL 336376, at *20 ("The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust."). *See also Lawry v. Palm*, 192 P.3d at 564 ("[I]f the elements of unjust enrichment are established, a plaintiff may be entitled to relief, even in the face of a contract with a clearly expressed contrary intent, if justice requires.").[10]  In this case, Defendants' retention of payments they received from individuals who, owing to Defendants' deception, never consented to the purchase of the home warranty plans, never knew they had them, and never tried to use them, would be manifestly unjust.  *See* RESTATEMENT OF RESTITUTION § 112 cmt. a (2005) (stating that a benefit conferred as a result of fraud may be basis for unjust enrichment).  Indeed, in some instances Plaintiffs unwittingly paid Cross Country's fees for lengthy periods.  FAC ¶ 131 (Emmert, 13 months); ¶ 136 (Toth, nearly a year); ¶ 141 (Rafacz, 11 months); ¶ 146 (Hendricks, 10 months); ¶ 232 (Peloza, over a year).  To make matter worse, some Plaintiffs unwittingly

---

[10] Defendants' cases are inapposite.  *USLife Title Co. v. Gutkin*, 732 P.2d 579, 585 (Ariz. Ct. App. 1986) (no unjust enrichment where plaintiff executed quitclaim deed that conferred benefit upon it); *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 112, 1130 (10th Cir. 2008) (no unjust enrichment based upon defendant's receipt of sales commissions in violation of licensing statutes); *Charles Griggs Bldg. Materials, Inc. v. Wong*, No. 6628, 1989 WL 35470, at *2 (Tenn. App. Apr. 14, 1989) (no unjust enrichment where under contract landowner paid full price for improvements to property); *Cannon v. Wells Fargo Bank, N.A.*, No. 13 Civ. 1324 (PWG), 2014 WL 672687, at *13-14 (D. Md. Feb. 20, 2014) (no unjust enrichment where plaintiff did not allege that defendant was responsible for placement of insurance policies and disputed premiums had since been refunded to plaintiff).

cashed *two* of Defendants' deceptive checks.  FAC ¶ 138 (Rafacz); ¶ 162 (Wisnewski); ¶ 208

(Elliott); ¶ 228 (Peloza).

Defendants may not now invoke "the benefit of the bargain" where Plaintiffs did not

knowingly enter into that bargain.  In fact, Defendants' unjust retention of payments procured

through fraud states a quintessential claim for unjust enrichment.  *See, e.g.*, *Connecticut Gen.*

*Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. 14 Civ. 2376 (DKC), 2015 WL

4394408, at *23 (D. Md. July 15, 2015) (refusing to dismiss unjust enrichment claim where

complaint alleged "it would be inequitable for [defendants] to retain millions in inflated

payments that they received due to their purportedly fraudulent scheme because [they] would be

unjustly enriched at the expense of the [plaintiff]"); *Bank of Nashville v. Chipman*, No. M2010-

01581-COA-R3-CV, 2011 WL 3433012, at *5 (Tenn. Ct. App. Aug. 5, 2011) (affirming finding

of unjust enrichment where loan proceeds were obtained through fraud).

### iii.   FED. R. CIV. P. 8 Permits Plaintiffs to Pursue Unjust Enrichment as an Alternative Theory of Recovery

Defendants next assert that Plaintiffs' unjust enrichment claims should be dismissed

because their "pursui[t] of a number of legal remedies in this litigation" bars them from showing

the absence of an adequate legal remedy.  (Defs.' Br. 22-23.)

While it is true that the absence of a legal remedy is typically a requirement for an

equitable claim such as unjust enrichment, it is well-settled that Federal Rule 8 permits a plaintiff

to pursue alternative theories of relief at the pleading stage.  As such, courts frequently reject the

very argument advanced by Defendants here.  *See, e.g.*, *Glaske v. Independent Bank Corp.*, 2016

WL 298986, at *10 ("In Michigan, a party is permitted to plead inconsistent claims. . . . It is well

established that a plaintiff may raise a breach-of-contract claim and allege in the alternative that

a contract is invalid, meriting equitable relief."); *Spuhler v. Massachusetts Mutual Life Ins. Co.*,

21

2015 WL 5970490, at *5 (rejecting "the argument that a cause of action for breach of contract cannot be pleaded in the alternative with a claim for unjust enrichment because the former is predicated upon the existence of an express contract while the latter is predicated upon the non-existence of an express contract"); *Manchester v. Ceco Concrete Const., LLC*, No. 13 Civ. 832 (RAJ), 2014 WL 3738650, at *2 (W.D. Wash. July 28, 2014) (refusing to dismiss unjust enrichment claims because "at the pleading stage, plaintiffs may allege alternative theories of recovery" and "the court will not know until it is presented with all relevant evidence . . . whether legal remedies are inadequate"); *Alliance Labs, LLC v. Stratus Pharm., Inc.*, No. 12 Civ. 927 (JWS), 2013 WL 273309, at *5 (D. Ariz. Jan. 24, 2013) (rejecting argument that plaintiff's claim for trademark infringement provided adequate legal remedy sufficient to bar unjust enrichment claim because "the availability of another remedy does not prevent [plaintiff] from pleading a claim for relief under the tort of unjust enrichment in the alternative"); *R.M. Harrison Mechanical Corp. v. Decker Industries, Inc*., 2008 WL 10669311, at *5 (plaintiff may plead unjust enrichment claims "additionally and alternatively").

### iv.   Texas and Virginia Recognize Unjust Enrichment As a Cause of Action

Finally, Defendants contend that the laws of Texas and Virginia do not recognize unjust enrichment as an independent cause of action.  (Defs.' Br. 22.)

Contrary to Defendants' contention, numerous decisions in Texas and Virginia recognize that unjust enrichment constitutes a cause of action.  Under Texas law, "[u]njust enrichment allows recovery when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Banion v. Geovera Specialty Insurance Company*, No. H-15-1595, 2016 WL 7242536, at *3 (S.D. Tex. Dec. 15, 2016) (internal citations and quotations omitted).  Thus, in *Newington Ltd. v. Forrester*, No. 08 Civ. 0864, 2008 WL 4908200 (N.D. Tex.

22

Nov. 13, 2008), the court refused to dismiss a claim for unjust enrichment based on the argument that it did not constitute an independent cause of action:

> [Defendant's] next argument is that unjust enrichment is not a cause of action recognized by Texas law.  This argument is incorrect.  [Defendant's] support for this contention comes from a handful of cases holding that unjust enrichment 'is not a distinct independent cause of action but simply a theory of recovery.'  It is true that there are Texas cases drawing a distinction between unjust enrichment as a "theory of recovery" and a "cause of action."  Some Texas courts, however, have ignored any such distinction and held that unjust enrichment is a cause of action.
>
> Despite the lack of unanimity among Texas courts, one thing remains clear: even in the cases that [defendant] cites, the courts have still allowed plaintiffs to recover based on the theory of unjust enrichment so long as a "person has obtained a benefit from another by fraud, duress, or the taking of undue advantage."  In other words, Texas courts may waffle about whether unjust enrichment is a theory of recovery or an independent cause of action, but either way, they have provided the plaintiff with relief when the defendant has been unjustly enriched.

*Id*. at *3-4 (citations omitted) (*cited by Blue Spike, LLC v. Texas Instruments, Inc*., No. 12 Civ. 499, 2014 WL 11848751, at *4 (E.D. Tex. July 25, 2014) (refusing to dismiss unjust enrichment claim) *and Yosemite Auto (Shanghai) Co., Ltd. v. JRS Metals, Inc.*, No. 15 Civ. 1641, 2016 WL 4441543, at *7 (S.D. Tex. Aug 23, 2016)).  *See also Banion v. Geovera Specialty Insurance Company*, 2016 WL 7242536, at *3 ("Texas courts recognize unjust enrichment as an independent cause of action"); *Mora v. Koy*, No. 12 Civ. 3211, 2013 WL 2289887, at *5 (S.D. Tex. May 23, 2013) ("unjust enrichment . . . can be a[n] independent cause of action"); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (same); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App. 1 Dist. 2007) ("Unjust enrichment is an independent cause of action.").  Because the FAC alleges that Plaintiffs' payments were procured through fraud, Plaintiffs have stated a viable claim for unjust enrichment under Texas law.

Similarly, under Virginia law, "unjust enrichment [] occurs when someone retains a benefit that otherwise would not have been retained but for some wrongful act." *Makel v. Tredegar Trust Co.*, 69 Va. Cir. 204, 208 n.16 (Va. Cir. Ct. 2005). Virginia law likewise makes reference to unjust enrichment as a cause of action and allows such claims to proceed. *See Blankenship v. Consolidation Coal Company*, 850 F.3d 630, 635 (4th Cir. 2017) (acknowledging unjust enrichment as a "cause of action"); *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (Va. 2008) (same); *Maggard v. Essar Global Ltd.*, No. 12 Civ. 00031, 2015 WL 1780838, at *1 (W.D. Va. Apr. 20, 2015) (stating that where an express contract does not cover the subject matter of dispute, "a cause of action for unjust enrichment remains available"); *Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*, No. 11 Civ. 00025, 2012 WL 1598130, at *5 (W.D. Va. May 4, 2012) ("Without an express contract covering the complained of conduct, Plaintiffs' cause of action for unjust enrichment may go forward."); *Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 Fed. Appx. 496, 503 (4th Cir. 2012) (applying Virginia law) (same); *The Christian Broad. Network, Inc. v. Busch*, No. 05 Civ. 558, 2006 WL 2850624, at *7-8 (E.D. Va. Oct. 3, 2006) (notwithstanding some confusion among Virginia courts, permitting unjust enrichment claim). Plaintiffs' unjust enrichment claims should therefore be sustained.

### B.    Plaintiffs' Claims for Breach of Fiduciary Duty Are Viable

Defendants seek to dismiss Plaintiffs' claims for breach of fiduciary duty against Ocwen allegedly because mortgagees do not owe a fiduciary duty to their borrowers. (Defs.' Br. 25-27.) This argument fails on several levels.

### i.    Ocwen is a Fiduciary Because It Acted as Plaintiffs' Escrow Agent

Defendants' argument overlooks the FAC's well-pleaded allegations that Ocwen's relationship with Plaintiffs extended beyond a traditional borrower-lender relationship to encompass Ocwen's role as Plaintiffs' escrowee. The FAC specifically alleges that:

24

> In addition to acting as a loan servicer, *Ocwen serves as Plaintiffs' escrow agent*, and owed Plaintiffs and the Class all the duties of a fiduciary when acting in its capacity as an escrowee.  A fiduciary relationship exists between the Class and Ocwen because *Class members reposed trust and confidence in Ocwen as their escrow agent to faithfully and properly manage their escrow funds*.  Class members trusted that checks issued by Ocwen would be related to escrow refunds, that small increases in their mortgage payments to Ocwen would be associated with their escrow accounts, and that any such charges would be clearly and conspicuously disclosed in their mortgage and/or escrow statements.

FAC ¶ 295 (emphases added).  Ocwen sent Plaintiffs deceptive checks that could easily be mistaken for escrow refunds and later issued misleading escrow and billing statements.  Such conduct is directly related to and flagrantly abuses Ocwen's role as Plaintiffs' escrow agent.

It is widely held across numerous jurisdictions that escrow agents owe fiduciary duties to the parties to the escrow account.  This is because an escrow relationship is one of "trust and confidence" that requires the escrow agent to "conduct transaction[s] with scrupulous honesty, skill and diligence."  *JGD, LLC v. American Title Service Agency, LLC*, No. 1 CA-CV 10-0466, 2011 WL 3475392, at *4 (Ariz. App. Aug. 9, 2011) (internal citations and quotations omitted) *see also Maganas v. Northrup*, 135 Ariz. 573 (Ariz. 1983) (fiduciary duty of escrow agent includes "duty to disclose known fraud"); *Meridian Title Corp. v. Pilgrim Fin.*, LLC, 947 N.E.2d 987, 992 (Ind. Ct. App. 2011) ("parties to an escrow bear a duty towards one another to act with due care" and "one who assumes to act as a depositary in escrow occupies a fiduciary relationship to each of the parties"); *Int'l Fid. Ins. Co. v. W. Virginia Water Auth.*, No. 11 Civ. 00441, 2012 WL 2357368, at *4 (W.D. Va. June 20, 2012) ("Because an escrow agreement creates a principal-agent relationship, certain fiduciary duties that normally accompany principal-agent relationships also apply within the context of escrow arrangements"); *Mt. Tai Asset Mgmt. Corp. v. Metro Equity Grp., LLC*, No. 09 Civ.10685, 2011 WL 65863, at *10 (E.D. Mich. Jan. 10, 2011) ("[A]n escrow agent may be liable in tort for the negligent performance of

25

its duties as escrow agent or breach of fiduciary responsibilities owed to its principal"); *Nat'l Bank of Wash. v. Equity Investors*, 81 Wn.2d 886, 909-10 (Wash. 1973) ("An escrow holder is an agent. . . . [A]s an agent, holder, or trustee for the parties, he occupies a fiduciary relationship to all parties to the escrow"); *Matter of Arrieta*, 105 N.M. 418, 420 (N.M. 1987) ("By acting as an escrow agent, Arrieta assumed a fiduciary relationship" to parties in real estate transaction); *Hoffman v. Gable*, No. 7-90-10, 1991 WL 260118, at *5 (Ohio Ct. App. Dec. 9, 1991) ("Gehres, as an escrow agent, owed a fiduciary duty to Appellants"); *Fulton Land Co. v. Armor Insulating Co.*, 192 Ga. 526, 527 (Ga. 1941) ("one assuming to act as a depositary in escrow occupies a fiduciary relation to each of the parties with respect to the instrument"). [11]

In fact, courts frequently sustain fiduciary duty claims where the escrow agent is alleged to have mismanaged the borrower's escrow funds—even where the defendant is a mortgagee or a lender. *See, e.g.*, *Perron v. JP Morgan Chase Bank, N.A.*, No. 12 Civ. 01853 (TWP), 2014 WL

---

[11] Unlike in the cases cited in Defendants' motion, here Plaintiffs' claims do not arise out of a mortgage transaction or out of Ocwen's role as a creditor. By disguising their check solicitations as escrow refunds or rebates (*see, e.g.*, FAC, ¶¶ 11, 62, 64, 70), Defendants used Ocwen's status as Plaintiffs' escrow agent to ensure that Plaintiffs would cash the checks without further inquiry. Therefore, while Defendants cite *Patetta v. Wells Fargo Bank, NA* to support the notion that it would be "antithetical to the often adversarial and contentious nature of the borrower-lender relationship to impose a fiduciary duty on the lender," the instant case does not involve a "garden variety . . . . negotiation between Plaintiffs and their lender" in which it was clear that Ocwen was not "acting in any other interest than [its] own." No. 09 Civ. 2848 (FLW), 2009 WL 2905450, at *8 (D.N.J. Sept. 10, 2009). Rather, Plaintiffs allege that Ocwen was acting in the interest of a third party, Cross Country, while making sure to conceal from its customers that by interacting with their loan servicer in a way that they reasonably believed they could—i.e., cashing a check that looked like an escrow refund—they would be benefitting an unknown third party.

Defendants' other cases are similarly inapposite: *Shedd v. Wells Fargo Home Mortg., Inc.*, No. 14 Civ. 00275, 2015 WL 6479537, at *6 (S.D. Ala. Oct. 26, 2015) (no claim for breach of fiduciary duty where "all…facts relate to [the bank's] servicing of the mortgage" and plaintiffs' allegations focus on the bank's "numerous mistakes in servicing their account."); *McMullen v. Ocwen Loan Servicing, LLC*, No. 16 Civ. 04120 (NLH) (AMD), 2017 WL 714347, at *1 (D.N.J. Feb. 23, 2017) (same); *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 125 (1997) (same, where all facts relate to the loan and foreclosure); *Adams v. JP Morgan Chase Bank, N.A.*, No. 15-12788, 2016 WL 3087701, at *7 (E.D. Mich. June 2, 2016) (currently pending appeal) (same); *Jean v. Am. Home Mortg. Servicing, Inc.*, No. 11 Civ. 1101 (WSD), 2012 WL 1110090, at *4 (N.D. Ga. Mar. 30, 2012) (same); *Huerta v. Ocwen Loan Servicing, Inc.*, No. 9 Civ. 05822 (HRL), 2010 WL 728223, at *2 (N.D. Cal. Mar. 1, 2010) (same).

931897, at *5 (S.D. Ind. Mar. 10, 2014) (plaintiffs stated a claim based upon allegations that loan

servicer was escrow agent for purposes of paying homeowners' insurance premiums and had

mishandled funds in the escrow account); *Lauren v. PNC Bank, N.A.*, No. 13 Civ. 762, 2013 WL

5565511, at *6 (W.D. Pa. Oct. 8, 2013) ("The theory that [defendant] used escrow funds under

its management . . . to enrich itself at the borrower's expense goes beyond the traditional lender-

borrower relationship and is sufficient to survive [a motion to dismiss]") (applying Ohio law).[12]

    *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21 (D.D.C. 2014), in which the

court refused to dismiss fiduciary duty claims against Ocwen, is illustrative.  In that case,

plaintiffs alleged that Ocwen, "as a servicing agent," owed fiduciary duties "with respect to

[plaintiff's] monthly payments on her mortgage, escrow account, and other related obligations."

*Id*. at 29-30.  In denying Ocwen's motion to dismiss, the *Edwards* court held as follows:

> . . . [P]laintiff identifies a narrower role that Ocwen allegedly played and that does
> give rise to fiduciary duties.  *See* Pl.'s Opp'n at 14 ("A fiduciary duty arises when
> a servicer acts as an escrowee for a borrower's escrow account."); *see also*
> Compl, Ex. J (escrow disclosure statement identifying Ocwen as debt collector at
> bottom of second page).  "[T]he D.C. Court of Appeals has held that escrow
> agents indeed have fiduciary duties to those parties who transfer funds into an
> escrow as well as those for whom the funds are held."  *World Class Constr.
> Mgmt. Grp.*, 962 F.Supp.2d at 299 (citing *Wagman v. Lee*, 457 A.2d 401, 404–05
> (D.C.1983)).  It also approvingly cited a case from the Arizona Court of Appeals,
> which characterizes the escrow relationship as one "of trust and confidence" that
> requires the escrow agent to "conduct transaction[s] with scrupulous honesty, skill

---

[12] Defendants cite several cases in which plaintiffs were unsuccessful in claiming that lenders breached a
fiduciary duty by allegedly misusing money from their escrow accounts.  (E.g., *Telfair v. First Union
Mortg. Corp.*, 216 F.3d 1333, 1341 (11th Cir. 2000); *Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d
763, 779 (E.D. Mich. 2010)).  Yet in contrast to such situations where the lender's rights and duties as an
escrowee are fully defined in an escrow agreement, in the instant case Ocwen reached outside of the
escrow relationship by targeting its own clients for Cross Country's scheme.  Accordingly, Defendants'
cases are unavailing.  *See Kennedy v. QBE Ins. Corp.*, No. 15 Civ. 00522 (EL), 2015 WL 11622472, at *5
(N.D. Ga. Aug. 5, 2015) (no fiduciary duty because it was understood that "the mortgagor was acting to
protect its own interest"); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110-1 (11th Cir. 2014)
(same).  Here, Ocwen never disclosed that it would be sending third-party solicitations disguised as
mailings from Ocwen, or that it would bill its customers on behalf of an undisclosed third party, and
Plaintiffs had no way of knowing that a third party had a stake in their relationship with Ocwen.

and diligence." *Wagman*, 457 A.2d at 405 (citing *Brean v. N. Campbell Prof'l Bldg.*, 26 Ariz.App. 381, 548 P.2d 1193, 1196 (1976)); *see also Aronoff v. Lenkin Co.*, 618 A.2d 669, 687 (D.C.1992) (escrowee is fiduciary to both parties in transaction); *In re Austern*, 524 A.2d 680, 684 (D.C.1987) ("Respondent, as co-escrow agent, owed a fiduciary duty to the client's purchasers to protect their investment. . . .").

The complaint frames the fiduciary relationship a bit too broadly—alleging that it arose from Ocwen's role as servicer—***but it is nevertheless clear that plaintiff accuses Ocwen of engaging in dishonest, unfair, and unlawful mismanagement of her escrow account***.  *See* Compl. ¶ 101.  Accordingly, I will not dismiss plaintiff's fiduciary duty claim to the extent it alleges breaches of those duties owed by escrow agents.

*Id*. at 30 (emphasis added).  For the same reasons, this Court should find Plaintiffs' allegations sufficient to deny Defendants' motion to dismiss.

## ii.     Several of the Newly Added Jurisdictions' Laws Are Akin to California

The FAC's allegation that Ocwen acted in a fiduciary capacity as Plaintiffs' escrow agent, by itself, is actionable.  (FAC ¶ 295.)  However, Defendants are also incorrect when they state that the laws of the newly added jurisdictions foreclose recognition of a fiduciary relationship between a mortgagor and mortgagee.  (Defs.' Br. 26-28.)  On the contrary, several of these jurisdictions embrace an expansive definition of fiduciary relations akin to California, which this Court previously held was sufficient to state a claim.  (September 24, 2014 Order at 47-48.)

For example, like California, the Alabama Supreme Court has refused to give a precise definition of a fiduciary relationship, holding that, "the [fiduciary] relation is not restricted to such confined relations as trustee and beneficiary, partners . . . managing directors and corporation, etc.  It applies to all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise.  It is the nature of the relation which is to be regarded, and not the designation of the one filling the relation." *Line v. Ventura*, 38 So. 3d 1,

12-13 (Ala. 2009) (citation omitted) (*cited by Jumbo v. Alabama State Univ.*), No. 16 Civ. 702

(WKW), 2017 WL 337994, at *4 (M.D. Ala. Jan. 23, 2017)).  *See also Power Equip. Co. v. First*

*Ala. Bank*, 585 So. 2d 1291, 1298 (Ala. 1991) ("Although this Court has previously held that

'other special circumstances' may create a fiduciary relationship, those circumstances have never

been defined").[13]  Other jurisdictions also echo California's statement that fiduciary relations

may arise where the lender "exceed[s] the scope of its conventional role as a mere lender of

money."  (September 24, 2014 Order at 47.)  Michigan law recognizes that a fiduciary

relationship may exist where the lender has "stepp[ed] beyond the traditional role of mortgage

servicer."  *Sheldon v. Vilsack*, No. 11 Civ. 10487, 2011 WL 6371289, at *4-5 (E.D. Mich. Dec.

20, 2011).  Similarly, under Arizona law, a fiduciary duty may arise where "there is a special

relationship created by excessive involvement in the lender's business."  *Narramore v. HSBC*

*Bank USA, N.A.*, No. 09 Civ. 635 (TUC) (CKJ), 2010 WL 2732815, at *8 (D. Ariz. July 7,

2010); *see also R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 108 N.M. 84, 92 (N.M. 1988) (bank

had duty of care where its involvement in disbursing funds, transferring funds and making

assurances regarding available funding in the future "well exceeded a 'normal lender's' role").[14]

Courts in these jurisdictions have denied motions to dismiss upon finding that the

plaintiff had sufficiently pled the existence of a duty between the lender or servicer and the

---

[13] This Court noted that California law has similarly been reluctant to give a precise definition of a
fiduciary relationship.  (September 24, 2014 Order at 48, n.25.).

[14] *Accord Barnes v. First Am. Title Ins. Co.*, No. 06 Civ. 574, 2006 WL 2265553, at *8 (N.D. Ohio Aug.
8, 2006) (broadly defining relationship sufficient to give rise to fiduciary duties as: "one person comes to
rely on and trust another in his important affairs and the relations there involved are not necessarily legal,
but may be moral, social, domestic, or merely personal"); *Liebergesell v. Evans*, 93 Wn.2d 881, 889-90
(Wash. 1980) (stating that "[i]n some circumstances a fiduciary relationship which allows an individual to
relax his guard and repose his trust in another may develop" including where one party "occupies such a
relation to the other party as to justify the latter in expecting that his interests will be cared for").

borrower.  *See, e.g.*, *Odyssey (III) DP X, LLC v. PNC Bank, NA*, No. 13 Civ. 01433 (JHE), 2014 WL 2050761, at *6 (N.D. Ala. Feb. 14, 2014) (plaintiff who had entered into loan agreement with bank alleged facts sufficient to indicate "special circumstances" where "[defendant] gained a level of superiority over it to a point the parties were no longer dealing on equal footing"); *McIntosh v. IndyMac Bank, FSB*, No. 11 Civ. 1805 (PHX) (GMS), 2012 WL 176316, at *3-4 (D. Ariz. Jan. 23, 2012) (holding that plaintiff sufficiently alleged claim for negligence based upon lender's breach of duty to correctly service plaintiff's account); *Ponder v. Bank of Am., N.A.*, No. 10 Civ. 00081, 2011 WL 8307207, at *4 (S.D. Ohio Mar. 8, 2011) (denying loan servicer's motion to dismiss due to special trust homeowners placed in the servicer and servicer's "special expertise" and "sophisticated understanding of loan servicing and loss mitigation options"); *Tonseth v. WaMu Equity Plus*, No. 11 Civ. 1359 (JLR), 2012 WL 37406, at *5 (W.D. Wash. Jan. 9, 2012) (holding that lender owes fiduciary duty where a "special relationship" exists and permitting plaintiff to amend claim for breach of fiduciary duty to assert such relationship).[15]

Because the laws in these jurisdictions are akin to California's, the same reasons identified in the Court's prior decision counsels denial of Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss Plaintiffs' well-pleaded Fourth Amended Complaint should be denied.

---

[15] *See also Escobar v. Wells Fargo Bank, N.A.*, No. 11 Civ. 285 (TUC) (DCB), 2011 WL 6794032, at *2-3 (D. Ariz. Nov. 9, 2011) (allegations that defendant lender made negligent misrepresentations tied to pre-foreclosure negotiations over the loan, the amount of monthly payments, as well as a possible short sale, sufficient to survive Rule 12(b)(6) motion to dismiss); *Barnes v. First Am. Title Ins. Co.*, 2006 WL 2265553, at *8 (denying insurance company's motion to dismiss because the nature of the relationship between the parties and any understandings between them or lack thereof required evidence outside the pleadings); *Birkholm v. Wash. Mut. Bank*, 447 F. Supp. 2d 1158, 1165 (W.D. Wash. 2006) (denying motion to dismiss due to issues of fact as to whether parties had fiduciary relationship).

Dated: June 15, 2017
      Armonk, New York        Respectfully submitted,

By:    /s/  Steven L Wittels
          Steven L. Wittels (SW-8110)
          J. Burkett McInturff (JM-4564)
          Tiasha Palikovic (TP-5697)

**WITTELS LAW, P.C.**
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:   (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Interim Lead Class Counsel*

**COWAN, LIEBOWITZ & LATMAN, P.C.**
J. Christopher Jensen
1133 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
Telephone: (212) 790-9220
Facsimile:   (212) 575-0671
jcj@cll.com

*Co-Counsel for Plaintiffs and the Class*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via

electronic mail this 15th day of June, 2017 upon the following counsel of record:


Matthew P. Previn
Caroline K. Eisner
Timothy Coley
BUCKLEY SANDLER LLP
1133 Avenue of the Americas, Suite 3100
New York, NY 10036
mprevin@buckleysandler.com
ceisner@buckleysandler.com
coley@buckleysandler.com
***Counsel for Ocwen Loan Servicing, LLC***

Mitchel H. Kider
Bruce E. Alexander
Jason W. McElroy
WEINER BRODSKY KIDER PC
1300 19th Street, NW, 5th Floor
Washington, DC 20036
kider@thewbkfirm.com
alexander@thewbkfirm.com
mcelroy@thewbkfirm.com

David J. Fioccola
Carrie H. Cohen
Jessica Kaufman
Robert James Baehr
Cameron Andrew Tepfer
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
fioccola@mofo.com
ccohen@mofo.com
jkaufman@mofo.com
ctepfer@mofo.com
***Counsel for the Cross Country Defendants***


_____/s/  Steven L. Wittels_____
          Steven L. Wittels